ELIZABETH MITCHELL, Appellee, v. SWANWOOD COAL COMPANY, Appellant.

**MASTER AND SERVANT:** Workmen's Compensation Act—Rejection of Act—Negligence—Nonnecessity to Plead.   Negligence of a master who has elected to reject the provisions of the Workmen's Compensation Act need not in any wise be pleaded.   Proximate negligence is presumed.   The master must exculpate himself.   (Sec. 2477-m, Code Supp., 1913.)

**JURY:** Qualifications, Etc.—Attorney and Client.   In a mine worker's action for personal injury, by reason of defects in the mine, a member of a local miners' union, which local union is a part of the organization composing a district union, and to which latter union said member contributes dues, etc., is not a "client" of an attorney employed by the executive committee of the

district union and paid out of funds to which said member has contributed, even though such member has a vote in the selection of such committee, but is in no wise financially interested in the cause on trial.

EVANS, J., dissents as to the qualifications of the juror.

JURY: Qualifications, Etc.—Necessity for Specific Objection. Objections to the qualifications of a juror must be specific, and the objector must stand or fall thereon.

NEGLIGENCE: Evidence—Similar Conditions—Scope of Admissibility. Evidence that the particular defect which rendered a mine dangerous at the point of injury existed *throughout the mine*, is admissible for the one purpose of showing notice to the master of the *condition* of the mine.

NEGLIGENCE: Acts Constituting Negligence—Failure to Inspect Mine. Failure of a master to perform his statutory duty to properly inspect his mine establishes negligence, especially when he had been specifically informed of the existence of a particular danger.

MASTER AND SERVANT: Workmen's Compensation Act—Negligence of Both Master and Servant. Under the Workmen's Compensation Act, the master is liable for an injury to the servant when the injury results from the combined contributory negligence of both of said parties.

*Appeal from Polk District Court.*—CHARLES DUDLEY, Judge.

FEBRUARY 13, 1918.

ACTION to recover for damages. Verdict and judgment for the plaintiff. Defendant appeals.—*Affirmed.*

*Stipp, Perry, Bannister & Starzinger,* for appellant.

*John T. Clarkson,* for appellee.

1. MASTER AND SERVANT: Workmen's Compensation Act: rejection of act: negligence: nonnecessity to plead.

GAYNOR, J.—I. This action is brought to recover for the death of one Stanley Damsky, an employee of the defendant's. It is claimed that his injuries were sustained while in the course of his employment. The deceased was a coal miner. Defendant was

engaged in operating a coal mine. Deceased was employed in mining coal at the time he received the injuries which caused his death. The injuries were caused by a fall of slate or rock or other material from the roof of the mine. The defendant had rejected the Workmen's Compensation Act, and was not operating under it.

Plaintiff, in his petition, stated these facts, substantially as set out above. Defendant filed a motion for a more specific statement, and asked the court to require the plaintiff to state: (1) Whether she relied upon negligence or carelessness of the defendant, either of omission or commission, as a basis for recovery; (2) if she did so rely, what breach of duty the defendant was guilty of that contributed to or caused the injury; (3) what acts the defendant was guilty of which she claimed constituted negligence, and were the proximate cause of the accident resulting in death. This motion was overruled, and this is the first error complained of. In the brief points submitted by appellant, it is stated thus:

"The court erred in not requiring plaintiff to plead the negligence on which she relied."

The thought of the defendant is that, inasmuch as it cannot be held liable except for negligence, the party who relies upon negligence as a basis for recovery must plead the facts which constituted the negligence, to make a triable issue. Negligence consists in the omission to do something which it was the duty of the defendant to do, or the commission of some act which it was the duty of the defendant not to commit, the commission or doing of which was the proximate cause of the injury. The mere pleading that he was in the employment of the defendant, who was operating a coal mine, and that he was injured, and that the injury arose out of and in the course of the employment, and

that the master has elected to reject the provisions of the act, does not, it is claimed, advise the defendant of the basic fact upon which liability is predicated, to wit, that it did or omitted to do something which it was bound not to omit or bound not to do; that the action is bottomed on negligence; that the master omitted to do something which in law he was bound to do for the safety of the servant, and that this omission was the proximate cause of the injury, or that the master did something which, under the law, it was his duty not to do, and that the doing was the proximate cause of the injury; that negligence is bottomed on the thought that the master has failed in his duty to the servant, to the injury of the servant; that the master owes many duties to the servant, and when the servant is injured by a failure of the master to discharge a duty, the servant, in a suit to recover for the injuries, must state the specific act which he claims constituted the negligence, so that the master may be advised of his claim, and be prepared to meet it or concede it.

This reasoning is good, and has support in authority, as a general proposition, and, if it were not for the provisions of the Workmen's Compensation Act, would be operative here. This act provides:

"In actions by an employee against an employer for personal injury sustained arising out of and in the course of the employment, where the employer has elected to reject the provisions of this act, it shall be presumed that the injury to the employee was the direct result and growing out of the negligence of the employer; and that such negligence was the proximate cause of the injury; and in such cases the burden of proof shall rest upon the employer to rebut the presumption of negligence." Section 2477-m, Subdiv. c (4), Code Supplement 1913.

We have no doubt that the legislature, in framing this provision, had in mind the then condition of the law touch-

ing the subject-matter covered by the statute, and recognized that, under that law, the master owed certain masterial duties to his servant, a failure to discharge which, resulting in injury, created liability on the part of the master. It recognized that it was the duty of the master, among other masterial duties, to exercise reasonable care to see that the servant had a reasonably safe place in which to work; that it was the duty of the master to furnish the servant reasonably safe tools and appliances with which to do the work assigned him; that a failure to do this, resulting in injury, created a liability on the part of the master. It recognized that these matters were susceptible of proof; that, under the law as it existed before this enactment, the burden rested upon the injured servant to prove the negligence of the master in respect to these matters and the injury. The legislature, no doubt, in its wisdom saw that, ordinarily, no injury arises to the servant when the master has discharged all these legal duties to the servant, and therefore said that an injury occurring to the servant while in the course of his employment, is at least presumptive evidence that the master has failed to discharge some of these duties, and that, after the passage of the act, in all suits growing out of injuries arising in this way, the burden should be upon the master to exculpate himself, and show that the injury did not result from any failure on its part to discharge its duties to the servant.

In the discussion, we confine ourselves to the phase of the case here presented: the failure of the master to furnish the servant a reasonably safe place in which to work. We assume that the servant was injured in the course of his employment, in his place, working for the master. When he engaged in the employment, the duty arose on the part of the master to see to it that the place in which he was called upon to discharge his duties to the master was reasonably

safe. The falling of the slate and the injury makes a prima-facie case that the master had not discharged this duty. The burden then came to the master to show that it was, in fact, reasonably safe, in order to escape liability. A showing that it was not reasonably safe, met by a counter showing that the servant, too, was negligent, and that the servant's negligence contributed to the injury, does not meet the requirements of the law, and exonerate the defendant. Whatever effect such showing may have upon the amount of recovery, it is no defense. To escape liability, the defendant must show that it was not negligent in respect to this matter, or that its negligence did not cause the injury, or that the injury was due to some willful misconduct on the part of the servant, or was the result of the intoxicated condition of the servant. The servant, in the course of his employment, assumes no risks incident to the business where the risk can be traceable to the master's negligence.

Of course, to bring it within the provisions of the statute, it must appear that the injury sustained arose out of and in the course of the employment. When the servant has established the employment, and that the injury arose out of and in the course of his employment, a prima-facie case of negligence is made against the master; and this prima-facie case rests on the thought or the assumption that, if the master had discharged his duties, the condition would not exist which produced the injury to the servant while in the course of his employment.

In pleading a cause of action, the pleader is not bound to state more than he is required to prove in order to establish his right to recover. He is not bound to negative any fact which his opponent is bound to allege and prove as defensive matter. It is said, however, that plaintiff's cause of action is bottomed on negligence; that he should at least have been required to say in his pleading that he claimed the defendant was negligent, even though not re-

quired to set out the specific acts of negligence; and that, negligence having been alleged, the proof of the substantive fact of negligence is to be found laid in the statute. But, under the statute, he is not bound to prove specific acts of negligence as a basis for recovery. He is not bound to prove, by substantive evidence, negligence at all, as a basis of recovery. When he shows the employment, and that he was injured in the course of his employment, the law steps in, and says to the master:

"This injury is presumed to be the result of your negligence. The burden rests on you to show that this is not true, and unless you so do, you shall be holden to answer for the injury."

To say in the petition that the plaintiff based his right of action upon the negligence of the defendant, would advise the defendant of nothing more than he is advised of by the mere statement of employment and injury in the course of employment; for the law steps in at that point, and says, *prima facie,* "This injury is due to your negligence;" and casts the burden upon the defendant to exonerate itself. We think there was no error in the court's ruling upon this point. See *Mitchell v. Phillips Mining Co.,* 181 Iowa 600.

2. JURY: qualifications, etc.: attorney and client. II. It is next contended that, in impaneling the jury, one Davis was permitted to sit as a juror in the trial of the case, over the objection of the defendant. It appeared from the examination of Davis that he is a member of a "local" at the South Des Moines Coal Company; that "the local" is a member of the Iowa District of the United Mine Workers of America; that the Iowa District employs the attorney for the plaintiff in this suit as its attorney; that the attorney was so employed, as the juror understood, on a salary by the year by the Iowa District, and was paid out of the

funds of the United Mine Workers of America of this district; that the funds are raised by dues which are paid by miners and withheld by the mine companies out of the pay checks; that the juror contributed in this way to the funds of the United Mine Workers of America; that plaintiff's attorney is attorney in the Iowa District, for the United Mine Workers of America; that, after he paid his dues, it was turned over to the state organization, and the juror had nothing further to do with it,—no power or control over it. It appeared that the juror had no cases in court at that time in which plaintiff's attorney represented him; that the plaintiff's attorney represented him in no litigation at that time; that the executive board alone employed the attorneys; that the juror had nothing to do with it. He said:

"A portion of what I pay in dues is taken to apply on the payment of whatever attorney they may employ, from time to time."

He further said that he was entitled to vote for the members of the executive board of this organization; that each member of each local has a vote on the subject; that it was entirely optional with him whether he employed the attorney or not. Thereupon, the defendant challenged the juror for cause, for the reason that the relation of attorney and client exists between him and Mr. Clarkson, an attorney who represented plaintiff in this case, and for the reason that the juror is contributing to the payment of Mr. Clarkson as such attorney. This challenge was overruled. The defendant exhausted all his peremptory challenges without reaching this juror. Error is predicated upon the ruling of the court.

The statute governing the question is Section 3688 of the Code of 1897:

"A challenge for cause is an objection to a juror, and may be for any of the following causes: * * * 5. Stand-

ing in the relation of   *   *   *   the client of any attorney
engaged in the cause."

3. JURY: quali-
fications, etc.:
necessity for
specific ob-
jection.

It has been held by this court that a
challenge for cause must specify the grounds
on which the challenge is based.   The atten-
tion of the court must be called to the par-
ticular ground upon which it is claimed the juror is dis-
qualified.   When the qualification of a juror is challenged,
and the court is asked to remove him from the panel by rea-
son of a disclosure of facts which disqualifies him from
sitting, the challenger must state the particular ground up-
on which he bases his right to have the juror removed.   It
is not error to overrule a challenge to a juror, where no
grounds are specified as a basis for the challenge; and the
court is not called upon to determine the qualification of the
juror, except as to the matter upon which his qualification
is challenged.   The error, if any, in the ruling, must be
found in the facts disclosed, and the challenge must have its
basis in the facts disclosed.   All other grounds of challenge
are waived when a specific ground is selected on which to
base the challenge, and on appeal, no ground will be con-
sidered except that urged as a basis for excusing the juror,
though other grounds may appear in the record upon which
a challenge might have been well based.   The error must be
found in the ruling on the challenge, in order to be revers-
ible.   *Payne v. Waterloo, Cedar Falls & Northern R. Co.*,
153 Iowa 445, and cases cited therein.

Here, it is apparent that the relation of attorney and
client did not exist between the juror and Mr. Clarkson.
Under the showing made, the court might well have sus-
tained an objection to this juror.   It should be the purpose
and object of the court to secure fair-minded and impartial
men to sit in judgment between the contending parties.
Where a state of mind is shown, or a condition disclosed,
that makes it apparent that the juror might not be impartial

between the parties, the court should excuse the juror. But where counsel selects the ground upon which he asks the court to act, the court does not commit reversible error in overruling, unless the particular ground selected presents a ground for removing the juror from the panel, and is shown to exist in the record. We find no reversible error committed by the court on this point.

III.    It is next contended that the court

**4. Negligence: evidence: similar conditions: scope of admissibility.** erred in overruling a motion interposed by the defendant to strike the testimony of a certain witness from the record.

One J. T. Damsky, son of the deceased, was called as a witness for the plaintiff. He testified:

"My father was in on the Saturday before. I was in on Friday. Father examined the roof along the roadway on Friday. He always examined the roof every morning when he gets in there. Q. In what way was the roof examined? A. Take a pick and going along and hitting up at the top, the top of the roof."

Then he testified:

"We would go along and we take and hit it, you know; if it is loose, it will give a hollow noise, drummy-like, and when it is real good and stout, you won't hear nothing, —just the sound off of the pick. When he sounded the roof on Friday, it was drummy along the roadway all the way. That draw slate always was in every room. It was drummy."

Defendant moved to strike out the statement that the draw slate was in every room, as irrelevant and immaterial. Overruled. Exception.

It was claimed in the trial that this particular place where the particular slate fell was "drummy." This witness testified:

"When father was hurt, I was standing in the roadway, about twenty feet from the working face of the coal of that

room. Slate fell and broke his ribs. It fell from the roof of the roadway. That was part of the roof that had been sounded and sounded drummy."

Now, of course, the fact that other rooms were "drummy," that the slate was loose in other rooms than the one in which the plaintiff was injured, or any other place, does not tend to prove that this particular slate·was loose or "drummy" at any particular time, nor can negligence be predicated on the thought that other rooms were allowed to become "drummy," if this particular place was not in the condition suggested. But it is a fact that might be considered by the jury in determining whether or not the defendant, in the exercise of reasonable care, should have known of the condition in this particular room. The statement of the witness was that this draw slate was in every room, and it was "drummy." This was not permitted to stand as showing substantive negligence, but as notice to the defendant of conditions existing there which called for the exercise of care on the part of the defendant to guard against injury from the existence of such condition; and the care must be commensurate with the dangers apparent.

Section 2489-13a, Code Supplement, 1913, provides:

"It shall be the duty of the mine foreman or pit boss in charge of any mine or part thereof to make careful inspection of the mine from day to day by himself or assistant."

This testimony was permitted to stand in the record, on the theory, indicated by the court, that it was proper, as bearing on the question of notice to the defendant of the condition of the mine. No reversible error here.

IV. It is next contended that the court 5. NEGLIGENCE: acts constituting negligence: failure to inspect mine. should have sustained a verdict for the defendant at the conclusion of all the evidence, for the reason that the evidence affirmatively shows that the accident was not caused by

defendant's negligence; that the evidence shows. that the duty rested on the decedent to timber the place in which he was working, and the decedent had assumed the duty of timbering the piece of slate in question, and was engaged in making the place safe at the time of the accident; that the proximate cause of the accident and injury was decedent's carelessness and lack of reasonable care in placing himself in a position of danger under or near the center of the piece of slate, in attempting to timber it; that the act of the decedent, and not the act or negligence of the defendant, was the proximate cause of the injury.

The evidence shows that decedent's working place was in room No. 12, off the nineteenth north entry; that there were props set up in the room to hold the roof as the work progressed; that the injury occurred on Monday; that, on the Friday preceding, deceased examined the room and roof. It is said in testimony that he examined the roof every morning when he got there; that, when the deceased sounded the roof on Friday, it was "drummy" along the roadway all the way; that room No. 12 was examined all the way down, on the morning of the day deceased was injured; that it sounded "drummy," just as it did on Friday preceding; that deceased was injured at about half past three in the afternoon of Monday, March 8, 1915; that the foreman was at the place about ten o'clock on that morning, and about the same time on the Friday preceding; that deceased told the foreman to timber the roadway, because it was getting "drummy;" that the slate that injured deceased fell from the roof above the roadway, a part of the roof that had been sounded, and sounded "drummy." The Friday preceding, deceased told the foreman that he wanted timbers put over the roadway, and he told him. the same again on Monday morning. Just before the slate fell that caused the injury, the deceased's son looked up, and saw a couple of slips. He called deceased, and said, "Here is a crack." Deceased

came, and ran his hand over it. He directed his son to get a prop. The son got the prop, and gave it to the deceased. Almost immediately, the slate fell, and caught him while in the roadway. The rails of the track on the roadway ran up to within twenty feet of the working face.

It will be noted that the statute does not itself fix, and from the statute itself it cannot be determined, where the working place of the miner is. Presumably, it is where he is working. It is in the room in which he is engaged in mining coal. Section 2489-13a, Code Supplement, 1913, provides:

"It shall be the duty of the mine foreman or pit boss in charge of any mine  *  *  *  to make careful inspection of the mine from day to day  *  *  *  and at such other times as in his judgment conditions may require. *  *  *  He shall see that the mines are supplied with props of proper lengths, caps and other timbers necessary to securely prop the roof of such mine and the rooms wherein the men are employed, and such material shall be conveniently placed for the use of the miners."

Section 2489-16a provides:

"It shall be the duty of each employe to examine his working place upon entering the same and shall not commence to mine or load coal or other mineral until it is made safe. Each miner or other employe employed in a mine shall securely prop and timber the roof of his working place therein and shall obey any order or orders given by the superintendent or mine foreman. relating to the width of the working place and to the security of the mine in the part thereof where he is at work.  *  *  *  When draw slate or other like material is over the coal he shall see to it that proper timbers are placed thereunder for his safety before working under the same."

This room in which the deceased was working was a part of the mine, and the duty rested upon the foreman to

inspect the same, under the statute hereinbefore set out. It was the duty of this foreman representing the company to make such reasonable inspection as was reasonably necessary to ascertain the true condition generally of the mine and of this particular room. Undoubtedly, the foreman was selected with reference to his peculiar qualification and fitness for this purpose. The condition of the roof of the mine, it is presumed, could be ascertained by careful inspection by one skilled in that line of work. That there was draw slate, and that it was "drummy" in this room, is a fact about which there is no dispute. That it fell is conceded. The jury might well have found that a proper inspection by the foreman before the fall would have ascertained the condition, and, the condition being ascertained, proper precautions should have been taken to remedy it; and that such duty rested upon the company.

It appears that, as work progresses, the original space called a "room" enlarges. In this particular mine, it appears that a track had been laid in the room, for the purpose of running cars in there for loading and removing the coal from the room. It appears, so far as this record shows, that deceased had moved his actual working place to a point some distance beyond the roadway, or the way on which the tracks were laid; that the slate from the roof fell over the roadway, and not at the place where the miner was engaged in his ordinary work; that he had called the attention of the foreman to the condition of the roof above this roadway, and had requested that it be timbered; that, at this particular time, deceased was about to make some effort to prevent the slate from falling; that, before he had prepared himself to do this work, the slate fell, and he was injured.

Under the Workmen's Compensation Act, contributory negligence does not defeat recovery. If the negligence of the defendant is a contributing cause to the injury, liability attaches. Under this statute, the employe assumes no risks that arise out of or that can' be traced to the negligence of the defendant, even though continuing to work, with knowledge of the negligence, and without complaint or promise of repair. The operators' and miners' agreement introduced in evidence shows the following provision with reference to the matter of timbering the roof of a room:

**6. MASTER AND SERVANT:** Workmen's Compensation Act: negligence of both master and servant.

"In case the room has been properly timbered, as above set forth, and the room from any cause becomes dangerous so as to require double timbering, the company shall, when notified by the miner, do the necessary work to protect the roadway."

It appears here that the foreman was notified of the condition of the roof of this room over the roadway, some time before the injury occurred. He failed to do anything to protect the roadway from falling slate. Intestate discovered cracks in this slate, which suggested to his mind imminent danger. The defect was in a place over the roadway, where it was the defendant company's duty to make repairs upon notice, and, we think, without notice, if discovered. This was at a point where the workingmen must pass in gaining ingress to and egress from the working face of the mine. Upon discovering the cracks in the roof, deceased was about to put in temporary supports under the loosened portion of the roof. This he had a right to do, not only for his own protection against the negligence of the company, but for the protection of others who might come in over the roadway, as well as for the protection of the company's property.

In the discussion of this case, counsel have adverted to

the rules that existed prior to the enactment of this statute; to wit, that, where a servant knows of the master's negligence, and continues work that he should know imperils his safety, and does this without complaint, and without promise of repair, he assumes the added risk incident to the negligence of the defendant, and waives its negligence, and cannot be heard to complain if he is injured. That rule has no application here. That rule has been abolished by the statute.

It appears that the place where plaintiff was working at the time he was injured was about 90 feet from what is called the mouth of the room; that tracks had been laid from the mouth of the room to within about 20 feet of the place where plaintiff was working; that the place where deceased was killed was about 30 feet from the face; that, when the roof becomes loose, it is double-timbered over the track, but not beyond the end of the track; that the room had been double-timbered over the track, in part,—one witness says, to within about 60 feet from where the slate fell, and that the roof, at the place where it fell, was the same as that back where the double timbering was placed. Another said:

"We had set some double timber about 30 feet from the mouth of the room—which would be about 60 feet from the face—at the request of Mr. Damsky, at the place where there was a kind of slip that went across the roadway where the slate was broken."

This testimony was given by the assistant boss. He further said:

"The company puts up cross-timbers in the room where it needs to be timbered."

Another witness testified:

"The face of the coal in Damsky's room was right in front of the track. He was taking out coal in front of the track all the time."

It further appears that the slate that fell and injured the plaintiff was over the end of the track nearest to the face of the coal.

The mine foreman testified:

"If the roof is in a loosened condition up to the place where the cars are being loaded, we double-timber when needed. There was from four to six feet that fell and killed intestate, lying back from the track; and there was four to six feet ahead of the track."

Another witness testified:

"The slate that killed intestate caught him in the roadway at a point about 30 feet from the face; that the slate that fell was from the roof of the roadway; that, on Friday preceding the injury, the deceased told Mr. Brown, the assistant boss, that he wanted timbers put over the roadway; told him again on Monday, the day the accident occurred."

We think that, under this record, the question of defendant's negligence was for the jury; and we cannot disturb its finding.

It is next contended that the court erred, not only in giving instructions on its own motion to the jury, but in refusing to give instructions asked by the defendant. We have examined these instructions, and find that they fairly present the law of the case, and no error prejudicial to defendant's rights is shown.

On the whole record, we think the cause ought to be, and is,—*Affirmed.*

PRESTON, C. J., LADD, SALINGER; and STEVENS, JJ., concur.

EVANS, J., dissents as to holding in second division, on question of juror's qualification.