CHARLES PAZEN, doing business as PAZEN TRANSFER LINE, Appellee, v. DES MOINES TRANSPORTATION Co., Appellant.

No. 43731.

MARCH 16, 1937.

Ralph N. Lynch, for appellee.

Casper Schenk, for appellant.

HAMILTON, J.—Primary highway No. 6 runs east and west through the little town of Ladora, Iowa. As you approach the town from the west, just at the edge of the residential district the

highway makes what is termed in highway parlance an "S" curve. The collision occurred just as defendant's truck was rounding the second curve of the "S", as it proceeded eastward into the town. The plaintiff's truck was proceeding westward out of Ladora. The accident happened about 9:30 p. m. on January 31, 1935. The pavement at this point is 18 feet wide with a black line marking the center. According to defendant's witnesses there was a thin coating of ice upon the pavement, while plaintiff's witnesses claim there was only frost. Both trucks were of the tractor-trailer type. The tractor on a truck of this kind has single wheels in front, dual wheels behind, and at the rear end of the tractor is attached the large trailer with dual wheels behind and dolly wheels near the front, upon which the front end of the trailer rests when disconnected from the tractor. The entire vehicle is referred to as, or called, a truck. Both trucks in this instance were thirty or thirty-five feet in length. Plaintiff's truck was empty, while defendant's truck was loaded with nine or ten tons of steel.

There were no eye-witnesses other than the drivers of the two trucks. Each truck carried an extra man, but neither of them was awake at the time. Alex Lautenslager was driving plaintiff's truck. Howard Ross was driving defendant's truck. Both were experienced drivers. The accident occurred within the city limits in what is termed in the statute "residential district" where the speed of vehicles is limited to 25 miles per hour, and under statutory provisions, section 5019 of the Code of 1935, the driver of a motor vehicle is required to travel on the right-hand side of the center of the street. Photographs were taken and introduced in evidence, showing the exact position of each truck immediately after the accident; also close-up photographs showing the effect of the collision upon the two trucks.

There is a sharp conflict as to how the accident occurred. Plaintiff's driver, Lautenslager, testified he was going twelve miles an hour, keeping north of the center of the pavement, near the north curb, proceeding westward, that he saw defendant's vehicle approaching three or four hundred feet away, and that he, Lautenslager, was then about one hundred feet from the place of the accident; that as defendant's truck approached within about 100 feet he saw it was crowding over the black line toward him; that when it got within about 75 feet, Lautenslager started to put on his brakes and started to turn out onto the shoulder; that de-

fendant's vehicle was traveling about 35 miles an hour; that Lautenslager got his tractor onto the shoulder but did not go far enough to get his trailer clear of the pavement. He says that defendant's vehicle came over across the 18 foot pavement, over the black line and struck his trailer while it was still on the north half of the pavement. He stopped within a few feet after the impact and photographs show the plaintiff's tractor uninjured, standing with its left wheels on the north edge of the pavement, facing directly west. The trailer was knocked clear around and rested diagonally with the pavement and at right angles to the tractor, the front end of the trailer facing south. The photographs show that defendant's tractor came in contact with the plaintiff's trailer, striking it a little back of the center of the body of the trailer, tearing a hole several feet in width, extending up from the bottom of the trailer body about half way, tearing the roof completely off the same and knocking the rear wheels and axle entirely from under the trailer, and knocking the left dual wheels completely loose from the axle. The damage caused to the defendant's truck, both the tractor and trailer, clearly indicates a glancing blow; that is, the front end of the defendant's truck did not hit the object squarely as the right fender of the defendant's tractor is uninjured. The radiator hood and engine are not driven straight back. The left upper corner of the defendant's trailer is also caved in, which must have been the thing that struck the roof on plaintiff's trailer. Likewise, the stripping of the left dual wheels from the axle of plaintiff's trailer indicates a glancing blow. Plaintiff's vehicle stopped within a few feet after the impact. Defendant's vehicle went practically in a straight line 100 feet east, running off the pavement over the shoulder into the gutter along the road.

Defendant's theory of the cause of the collision is based on the testimony of the driver of defendant's truck and certain physical facts pointed out in argument. Defendant's driver testified that he was never over the black line. He said that he saw plaintiff's headlights approaching him as he was coming out on the "S" curve. He had just made the first curve to the right and was then turning to the left; that he saw the plaintiff's truck coming down the road at a pretty good rate of speed, and that he rode over on the edge of the shoulder and it seemed like it was just a second before the collision. "Plaintiff's outfit went crossways of the road in front of me and from then on I couldn't say

what did take place. The back end of his trailer swung around crosswise of the road." He says that at no time was his vehicle left of the black line. The impact broke the steering gear and he lost complete control of the car, and the momentum carried it right straight forward into the ditch or gutter along the side of the road. He declined to fix any rate of speed of the plaintiff's car. He said that the plaintiff's tractor seemed to be on his own side of the street as they approached each other. On cross-examination this question was asked: "Q. So it is your theory, Mr. Ross, the way this accident happened, this 7100 pound trailer of Mr. Pazen suddenly swung to the south practically at right angles with the tractor before the collision, is that correct? A. Yes, sir. His trailer was on the south side of the road. It was practically at right angles and was still swinging in the direction toward us when we hit it."

The position of the plaintiff's trailer and tractor as shown in the photographs, indicates that the plaintiff's vehicle must have been practically stopped when the impact occurred. The tractor portion of the vehicle is sitting parallel with the highway, two-thirds off the paving, while the trailer, still attached to the tractor, was knocked clear around and rested at right angles with the highway. The rear axle was knocked completely from under the trailer, which let the rear end of the trailer drop to the pavement, or perhaps partially rest on the dolly wheels.

Three grounds of negligence were submitted to the jury:

(1) That the driver of defendant's truck failed to turn to the right and yield one-half of the traveled way when meeting plaintiff's vehicle.

(2) That the driver of defendant's vehicle failed to maintain a proper lookout for other vehicles on said highway.

(3) That the driver of defendant's truck was operating the same at a dangerous rate of speed under the circumstances then and there existing;

and the jury was properly instructed that it was necessary that the plaintiff establish by a preponderance of the evidence one or more of these grounds, and that the same was or were the proximate cause of the accident, and that plaintiff was free from contributory negligence, and that damages in some amount were sustained by plaintiff. Counsel for appellant, in a very carefully prepared and ably presented argument, earnestly contends that the only question in the case is, Who was on the wrong side of

the highway? and that the first ground of negligence covered the entire matter and nothing more should have been submitted to the jury. By motion to withdraw, exceptions to instructions, and motion for new trial these matters were properly presented to the trial court without success, and hence this appeal.

It is asserted that there is no evidence of defendant's failure to keep a proper lookout or that the defendant's truck was being driven at an excessive rate of speed, or that either of these allegations of negligence was the proximate cause of the collision, and it was therefore error to submit allegations of negligence of which there was no competent proof; that the defendant was entitled to have the jury concentrate upon the issues properly pleaded and competently supported without speculating on anything else; that if the collision occurred as contended by plaintiff, by the defendant's truck crossing the center line, that it was the wrongful crossing of the center line in violation of section 5019 of the Code of 1935, that was the proximate cause of the injury, and not the failure to keep a lookout or the speed at which the defendant's truck was being driven, and that proof of the fact that the defendant was on the wrong side of the street or highway in and of itself was not evidence sufficient to support the alleged failure to keep a lookout or to sustain the charge of excessive speed; and counsel stoutly contends that there was no evidence to support these latter issues, other than the testimony of the plaintiff's driver that the collision occurred across the black line on plaintiff's side of the highway. We are unable to agree with counsel for appellant. The driver of defendant's truck was quite positive he was never over the black line. The driver of the other truck is just as positive he was. The fact is that the tractor portion of plaintiff's vehicle was conclusively shown by the photographs in evidence to have been at least two-thirds of the way over on the shoulder, standing parallel with the pavement, showing that it must have been stopped almost immediately after the impact. Had it gone forward after the impact it would have taken the trailer—still attached—with it. This it did not do for the trailer was left standing at right angles with the back end of the tractor. The collision may have happened as defendant's driver says. The jury must have thought otherwise. They must have found that he did drive across the black line into plaintiff's vehicle, and that the driver of defendant's vehicle was not keeping a proper lookout as to the location

of the two vehicles with reference to the black line in the center, or that he was proceeding at an excessive rate of speed under the circumstances around this curve on the slippery, icy pavement with this heavy load of steel, unable to control the same. On this theory, which was the plaintiff's theory of the case, surely it was proper to submit both failure to keep a proper lookout and excessive speed under the circumstances, as well as failure to keep to the right of the center. Otherwise, the court would be driven to the position of assuming that the defendant's driver purposely and intentionally drove across the line into the other vehicle or to accepting as true the defendant's version that he never was across the line at all.

There is no presumption that the operator of the defendant's truck purposely and intentionally crossed over the center and deliberately drove into plaintiff's truck and laid himself liable to punishment. The presumption is just the opposite. On plaintiff's theory of the case he did drive across the center. Why, how, what brought it about? The object of this trial below was to find out who was at fault, who did the wrong and caused the injury. Of course, there must be a causal connection. The negligent act must be the proximate cause, or one of the proximate causes of the collision. In stating the grounds of negligence there must be something left to the jury. It is not for the court to put his finger on the one and only thing that brought about the accident and brand it with unerring accuracy and scientific precision as the one and only proximate cause. Usually this is for the jury. ''The true rule is that what is the proximate cause of an injury is ordinarily a question for the jury. It is not a question of science or legal knowledge. It is to be determined as a fact in view of the circumstances of fact attending it. * * * It is admitted that the rule is difficult of application. But it is generally held that, in order to warrant a finding that negligence, or an act not amounting to wanton wrong, is the proximate cause of an injury, it must appear that the injury was the natural and probable consequence of the negligent or wrongful act, and that it ought to have been foreseen in the light of the attending circumstances.'' Milwaukee & St. P. R. Co. v. Kellogg, 94 U. S. 469, 474, 24 L. Ed. 256. This statement of the rule was adopted by this court in Godbey v. Grinnell E. & H. Co., 190 Iowa 1068, 181 N. W. 498. See also Wine v. Jones, 183 Iowa 1166, 1179, 162 N. W. 196, 168 N. W. 318; Mitchell v. Swanwood

Coal Co., 182 Iowa 1001, 166 N. W. 391. ''Where several proximate causes contribute to an accident and each is a sufficient cause without the operation of which the accident would not have occurred, it may be attributed to all or any of the causes.'' Judd v. Rudolph, 207 Iowa 113, 119, 222 N. W. 416, 419, 62 A. L. R. 1174. ''In a general way, it may be said that, to ascertain whether or not a thing complained of is the proximate cause of an injury, it is necessary to determine what was the thing amiss, either of omission or commission, without which the injury or loss would not have occurred. It has sometimes been called the 'moving' cause or 'producing' cause, or the 'causing' cause.'' Eclipse Lbr. Co. v. Davis, 196 Iowa 1349, 1355, 195 N. W. 337, 340.

We have not attempted to set out all the testimony, but a careful examination of the testimony of Mr. Ross, driver of defendant's truck, reveals an element of uncertainty, amounting almost to guess-work as to the exact position of defendant's truck at the time of the collision. In his direct examination he avowed that he was out on the shoulder to the right, and that plaintiff's trailer swung clear over onto the right shoulder. When confronted with a written statement that was taken the evening after the accident, and which he had in his own handwriting stated was true and correct, and which apparently was at variance with his testimony, on this point he finally said: ''Well, it was extended over the black line quite a ways, it was dark and you couldn't hardly tell whether it was on the shoulder. * * * It was pretty close to the shoulder.'' Also in his direct testimony he said he was far enough from the plaintiff's trailer when it swung around in front of him that he had an opportunity to turn to the right and get out on the shoulder, but when confronted with the written statement he admitted that it contained the statement that ''when this trailer came over on my side of the road I was only about 4 or 5 feet from it. This all happened so quickly that I didn't have time to put on my brake or turn out of the way.'' As against this we have the positive statement of the driver of plaintiff's truck that he did cross over onto the north side. This is corroborated by the fact that plaintiff's truck came to rest with the left wheels of the tractor on the north edge of the paving, with the trailer resting at right angles to the back end of the tractor, indicating it came to a stop almost immediately after the impact.

There is also a direct conflict as to the speed of defendant's truck. He testified that his speed was under 25 miles. Plaintiff's driver fixed the speed at 35 miles. Again the physical facts corroborate plaintiff's driver. It is obvious that it required a terrific force to produce the results plainly indicated by the photographs. Counsel for appellant asserts there is no evidence of failure of lookout or of excessive speed, that the record shows that the driver Ross saw the headlights of plaintiff's truck several hundred feet before the impact. Therefore he was keeping a lookout. The term "proper lookout" means more than to look straight ahead, or more than seeing the object. It implies being watchful of the movements of his own vehicle as well as the movements of the thing seen. It involves the care, prudence, watchfulness and attention of an ordinarily careful and prudent person under the circumstances. Having glanced ahead of him and observed the approach of the other truck, the rule which required him to keep a proper lookout had not been fully met. They were meeting on an "S" curve. The pavement was slippery. It was in the nighttime with the glare of the headlights. These huge vehicles were from thirty to thirty-five feet in length. A proper lookout called upon the driver of each of these trucks to exercise that degree of care that an ordinarily prudent person would exercise, to ascertain where he was driving with reference to the middle of the pavement, and also with reference to the position of the other vehicle approaching, and to govern his speed in such a way as to be able to keep his machine under control and upon his proper side of the pavement, in order to avoid a collision.

The weight of the evidence was for the jury. They were entitled to draw reasonable inferences from the facts and circumstances disclosed by the testimony. In a great many of these accident cases the truth is hard to ascertain from the testimony. Certainly if the jury believed the defendant's driver, the question of lookout or the question of speed had nothing to do with the case, for according to his story he was always over on the right half of the pavement. But they were not obliged to believe him. On the other hand if they believed the plaintiff's theory that the accident occurred north of the center of the pavement, then the natural inferences from the apparent inconsistencies in the testimony of the driver of the defendant's truck as to just where he was driving would be that he didn't know where he

was driving, or that he had lost control of his car because of excessive speed while negotiating this curve upon the slippery pavement. We realize these matters are difficult and courts, judges and lawyers will differ in their interpretation and application, but as we view the question under the facts in this particular case, all three grounds of negligence were properly submitted to the jury.

Appellant also contends that there is nothing in the record to support the issues of failure to keep a lookout or excessive speed except circumstantial evidence, and that the court failed to give the usual instructions with reference to circumstantial evidence. The difficulty with this contention is that the case does not depend on circumstantial evidence alone, and therefore is not such a case as calls for the application of the rule contended for by appellant. We think that in this case under all the facts, if counsel for appellant desired more specific instructions as to any particular theory of the case, it was his duty to request the same. There was a counterclaim in which appellant set forth its theory of the cause of the accident, and in which plaintiff's driver is charged with negligence, and in submitting the counterclaim the court applied the same rules as to burden of proof and proximate cause that were applied in submitting the main case, so that the jury had the theories of each of the parties to this litigation. They evidently believed the theory advanced by plaintiff.

Counsel for appellant also complain of the giving of the following instruction: ''The highways of this state as the term indicates, are for the use of the public. Both defendant and plaintiff had a right to use the highway in question at the time and place involved in this case, but each was required to use the same with due regard to the rights of the other, and each had a right to assume that the other would observe the law governing the use of the highways at the time and place involved in this case.'' The objection is that it concedes to the plaintiff the right to indulge the assumption even though he was wrongfully upon the defendant's side of the highway, and that this assumption is not applicable to one who is not rightfully driving on the highway. Both of these parties were rightfully on the highway, that is, they had a right to use the highway, and as they approached each other on this highway, each certainly had a right to assume that the other would keep to the right and drive upon his own right half of the street, until in the exercise of ordinary care it

became apparent to him that this assumption could no longer safely be indulged. We think the appellant is unduly technical and hypercritical in criticizing the giving of this instruction.

Appellant also urges as grounds for reversal that the verdict is not supported by sufficient evidence, and is contrary to law. The evidence was in sharp conflict. It was a matter for the jury to determine. There was sufficient evidence to support the finding of the jury. We see nothing in this record that would warrant us in disturbing the jury's finding.

No error appearing in the record, the cause is affirmed.— Affirmed.

MITCHELL, ANDERSON, KINTZINGER, PARSONS, and STIGER, JJ., concur.