A. JAMES SCHNEIDER, appellee, v. SWANEY MOTOR CAR Co.,
appellee, and JAMES QUICK and EARLE FLETCHER,
d/b/a Fletcher Motor Sales, appellants.

No. 51624.

(Reported in 136 N.W.2d 338)

June 30, 1965.

Alan Loth, of Fort Dodge, for appellants.

Gerald L. Shaffer and Robert L. Ulstad, both of Fort Dodge, for plaintiff-appellee, and Bannister, Carpenter, Ahlers & Cooney, of Des Moines, for Swaney Motor Car Company, appellee.

MOORE, J.—On Saturday morning, February 4, 1961, the automobile of plaintiff, A. James Schneider, while stopped for a traffic light at or near the intersection of Central Avenue and Sixth Street in Fort Dodge was struck from the rear by a truck driven by defendant James Quick. This is an action for the resulting damages. Plaintiff made Swaney Motor Car Company, an Iowa corporation, and Earle E. Fletcher defendants, claiming Quick was operating the truck with permission of each. Quick and Fletcher cross-petitioned against Swaney, claiming a right to indemnity. From judgment on verdict for plaintiff against them and denying indemnity Quick and Fletcher have appealed.

Defendants-appellants Quick and Fletcher on plaintiff's claim assign 43 errors. On their claim against Swaney for indemnity they assign 17 errors. They have not, however, argued each claimed error separately but grouped them in divisions. Each appellee has argued the assigned errors in divisions in so far as material to each. We shall so consider them.

On February 2, 1961, Fletcher, after some negotiation, made a wholesale purchase of six motor vehicles from Swaney for $3000. He signed an order which was accepted by Swaney which stated it comprised the entire agreement affecting the order and that no other agreement or understanding of any nature had been made or entered into. Fletcher testified Joel Johnson, Swaney's general manager, represented the vehicles to be "roadworthy". Johnson denied making such a statement or that the vehicles would be filled with gas or readied as claimed by Flet-

cher. He testified he had no knowledge of how Fletcher intended to move the vehicles. Johnson and other used car dealers testified a wholesale sale of used cars is a cash transaction on an "as is", "where is" basis but the purchaser has the right to inspect or drive the vehicle before buying. Witness Don Carney testified: "If the buyer takes it, it is his 'baby'. If it falls apart when he gets down the street, it is still the buyer's."

Quick, a Des Moines policeman, and others including Fletcher's son, Charles, were employed by Fletcher to go to Fort Dodge and drive the six vehicles to Des Moines. Upon arrival at the Swaney used car lot, Quick was assigned to drive a 1953 Ford truck (acquired by Swaney January 13, 1961) which was one of the purchased vehicles. He had never seen the vehicle before. A battery charger was being used on it when the party arrived. Quick testified one of Swaney's men started the truck, told him it was ready to drive and where to go across town to get gas.

Quick testified he, without making any test of the vehicle, drove the truck west over the lot to Third Street, then a few feet north to Central Avenue and then east on Central. He did not stop before entering the public street from the private lot. He said he did not know the law required him to do so. As he drove eastward on Central Avenue he went around the public square between Fourth and Fifth Streets and finally turned east again when he said he observed plaintiff's vehicle stopped for the red light at Sixth. There was a light cover of snow or slush on the streets. After traveling some distance on Central at about 15 miles per hour toward plaintiff's stopped vehicle, Quick testified he for the first time applied the truck brakes but they did not respond. He was unable to estimate his distance from plaintiff when he first applied the brakes. After pumping them and throwing the clutch in and out to no avail he attempted to turn left to avoid striking plaintiff's car and thought he had done so until the right end of the truck's front bumper struck the left rear corner of the car. The heavy truck bumper extended out beyond the fender some distance.

Quick testified he did not believe the car was moved by the collision. Plaintiff said he was moved ahead several feet, the truck hit "real hard" like he was "hit with a crowbar".

After the accident Charles Fletcher, who had followed the truck, told plaintiff Fletcher would take care of the damages. Charles then drove the truck back to Swaney's lot where one of Swaney's men inspected the master brake cylinder and found it needed brake fluid which was put in. Thereafter the brakes worked and the truck was driven to Des Moines.

Quick testified the man who opened the brake cylinder said "There's cobwebs in there". Charles Fletcher testified the man said there was not any fluid in the cylinder. He said nothing of any comment about cobwebs. With such a record appellants argue the cobwebs existed and that the sole cause of the accident was lack of brakes. The trial court did not agree with appellants' contention but submitted to the jury the pleaded specifications of unreasonable speed under the circumstances, lookout, control and inadequate brakes.

I. Several of appellants' assigned errors involve their contention that the question of proper lookout by Quick should not have been submitted to the jury.

In considering this contention as well as appellants' claim that lack of proper control should not have been submitted to the jury certain general rules must be kept in mind.

When the court instructs the jury upon a certain question there must be some evidence upon which to base such instruction. Wilson v. Kouri, 255 Iowa 348, 355, 122 N.W.2d 300, 304; Clubb v. Osborn, 256 Iowa 1154, 1160, 130 N.W.2d 648, 652. And it is reversible error to submit an issue having no support in the record. Borough v. Minneapolis & St. L. Ry. Co., 191 Iowa 1216, 1223, 184 N.W. 320, 323; Clubb v. Osborn, supra, and citations.

In considering whether there is evidentiary support for an instruction we give the evidence the most favorable construction it will reasonably bear. Clubb v. Osborn, supra.

Even when the facts are not in dispute or contradicted, if reasonable minds might draw different inferences from them, a jury question is engendered. Citation of authority is unnecessary. See Rule of Civil Procedure 344(f)17. This proposition is recognized in Brinegar v. Green (Iowa), 117 F.2d 316, 319, where the court states: "The determination of the existence of

negligence where the evidence is conflicting or the undisputed facts are such that fair-minded men may draw different conclusions from them is a question of fact for the jury and not one of law for the court."

Driving an automobile into another in plain sight is evidence of negligence. Harris v. Clark, 251 Iowa 807, 809, 103 N.W.2d 215, 217. It is evidence of improper lookout, lack of control, speed and other specific acts of negligence, including driving with faulty brakes. Ruud v. Grimm, 252 Iowa 1266, 1274, 110 N.W.2d 321, 325. The evidence in each case must be carefully considered as to which acts or omissions caused the collision. It is not for the trial court to put his finger on the one and only thing that brought about the accident and brand it with unerring accuracy and scientific precision as the one and only proximate cause. Usually this is for the jury. Pazen v. Des Moines Transportation Co., 223 Iowa 23, 28, 272 N.W. 126, 130.

Proper lookout means more than merely to look and see an object. It implies being watchful of the movements of the driver's own vehicle as well as the movements of things seen or seeable. It involves care, watchfulness and attention of the ordinarily prudent person under the circumstances. Pazen v. Des Moines Transportation Co., supra, 223 Iowa 23, 30, 272 N.W. 126, 131; Olson v. Truax, 250 Iowa 1040, 1048, 97 N.W.2d 900, 905; Kuehn v. Jenkins, 251 Iowa 718, 725, 100 N.W.2d 610, 615.

Quick testified that after he observed plaintiff's stopped car he did nothing until he had continued some distance. He did not testify he continued to observe plaintiff's vehicle. His testimony includes, "When I found I was too close to him to come to a complete stop, I steered to the left." Also "Just before we hit, I didn't know they were going to. I thought I had missed him."

We conclude reasonable minds might draw different inferences from the facts in this case. The jury could have found Quick knew or should have known about the brakes soon after he started driving the truck. A jury question was engendered as to whether Quick kept a proper lookout.

II. A number of appellants' assigned errors claim lack of

1184

control should not have been submitted as a specification of negligence.

A motor vehicle is "under control" if it is moving at such a rate of speed and the driver has the mechanism and power under such control that it can be brought to a stop with a reasonable degree of celerity. Ehrhardt v. Ruan Transport Corp., 245 Iowa 193, 196, 61 N.W.2d 696, 698, and citations. Of course the existing conditions must be considered. Johnson v. Kinnan, 195 Iowa 720, 723, 192 N.W. 863, 865, states: "Manifestly, the ability to turn the automobile and to expeditiously change its course to avoid collision or injury may have something to do with the 'control' of an automobile. The present ability to increase or decrease the speed at which a car is moving, and likewise the ability to divert or change its course, may be properly involved in the question of control." See also Lynes v. Schmolt, 241 Iowa 1303, 1306, 45 N.W.2d 221, 222; Ehrhardt v. Ruan Transport Corp., supra.

Under the facts here the question of whether Quick had the truck under proper control was for the jury.

III. Plaintiff pleaded his claim against Quick in two divisions. One alleged specific charges of negligence. The other was a general charge of negligence under the res ipsa loquitur doctrine. The trial court submitted both. We approved such procedure in Eaves v. City of Ottumwa, 240 Iowa 956, 38 N.W.2d 761, 11 A. L. R.2d 1164. Appellants made several attacks under their claim the res ipsa loquitur division should not be considered and assert them here. The thrust of their argument is that the evidence shows the sole cause of the accident was lack of brakes. We, like the trial court, disagree with this claim.

Under the res ipsa doctrine where injury occurs by an instrumentality under the exclusive control of defendant and the occurrence is such as in the ordinary course of things would not happen if reasonable care had been used, the happening of the injury permits but does not compel an inference that defendant was negligent. Harvey v. Borg, 218 Iowa 1228, 257 N.W. 190; Eaves v. City of Ottumwa, supra; Shinofield v. Curtis, 245 Iowa 1352, 66 N.W.2d 465, 50 A. L. R.2d 964; Edwards v. Des Moines Transit Co., 251 Iowa 163, 99 N.W.2d

920; Ruud v. Grimm, 252 Iowa 1266, 110 N.W.2d 321. It means, simply that the facts speak for themselves. It is, therefore, a rule of evidence. Harvey v. Borg, supra; Stites v. Des Moines Transit Co., 249 Iowa 185, 85 N.W.2d 905; Edwards v. Des Moines Transit Co.; supra.

The facts here are undisputed that Quick had exclusive control of the truck. In both the Harvey and Ruud cases we held driving into the rear of a motor vehicle in plain daylight is such an occurrence as in the ordinary course of things would not happen if reasonable care had been used.

In Eaves v. City of Ottumwa, supra, at page 968 of 240 Iowa, page 768 of 38 N.W.2d, we say: "The mere introduction of evidence of specific negligence does not prevent resort to the res ipsa rule under general allegations." We do not repeat the many authorities there cited.

In Harvey v. Borg plaintiff, as here, showed defendant's admissions of driving without proper brakes but this does not bar application of the res ipsa doctrine. Not until the jury has spoken can it be known whether plaintiff has succeeded in establishing the specific negligence charged.

"Where the precise cause of the injury clearly appears or is beyond dispute, of course there is no room for inference and the res ipsa rule has no application." Eaves v. City of Ottumwa, supra. However, the record does not disclose such facts here.

IV. On cross-examination by appellants' counsel, plaintiff was shown exhibit A. He testified it was a photograph of his car but that it was not a fair representation of the damages to the left corner and back bumper. Appellants then offered exhibit A. The trial court sustained plaintiff's objections thereto. On appellants' case in chief it was identified by an insurance adjuster and received in evidence. On rebuttal plaintiff identified exhibits 13 and 14 as photographs of the damage to his car. Appellants objected to these exhibits on the ground plaintiff had testified on cross-examination he did not have photographs of his damaged car. The court sustained appellants' objection. We are not asked to review this ruling nor do we do so. The record discloses plaintiff testified on cross-examination he had taken pictures of the damages with equipment belonging to an-

other but that he had never seen or had in his possession the actual photos. Apparently his attorney had them.

Swaney made no objections to exhibits 13 and 14. The trial court ruled and instructed that these photos were only to be considered as against Swaney. Appellants claim such use was prejudicial error against them. We believe the jury was entitled to consider them as against Swaney. See 88 C. J. S., Trial, sections 82(c) and 87.

Damage to plaintiff's vehicle was shown by other evidence. Exhibits 13 and 14 were cumulative. We find no prejudicial error in the court's ruling permitting them to be considered by the jury under the specific limitations pointed out by the court.

V. Under one division appellants argue 14 assigned errors which refer to the admissibility of exhibits 5, 7 and 9. Exhibit 5 is a statement for services rendered plaintiff by Mercy Hospital of Des Moines between January 17 to 20, 1962. Exhibit 7 is the statement of John Bakody, M.D., neurosurgeon, for professional services furnished plaintiff on January 13, 17 and 18, 1962. Exhibit 9 is a Mayo Clinic statement dated June 20, 1962, for inclinic services furnished plaintiff. Appellants contend plaintiff failed to show any causal connection between the accident, his injury, the numbness which he experienced and these services.

Plaintiff, 25, a State College of Iowa graduate in 1958 was at the time of the accident (February 4, 1961) teaching physical education, driver's training and coaching high school baseball and basketball. He was active in athletics and played semi-pro baseball. He testified he was stunned at the time of the accident and felt a twinge through his shoulders but did not think he had been seriously injured. Within a few days he felt pressure down his neck and through his shoulders and back.

Within the first or second week after the accident plaintiff began taking treatment from his father, Dr. Arnold Schneider, an osteopath, who lived some distance from where plaintiff was teaching. He was able to see his father only on weekends. During the third week plaintiff began taking treatment from Dr. Ralph L. Bircher, osteopath at Dayton. He continued taking osteopathic treatments up to the time of trial.

Plaintiff testified his neck and back were getting progressively worse and that upon his father's advice he in April and May 1961 went to Dr. Roy O. Sebeck, an orthopedic specialist, in Fort Dodge. Doctor Sebeck took X rays, examined plaintiff and told him of his condition. He was not treated by Doctor Sebeck at that time but in April or May 1963 when plaintiff returned with the same complaints Doctor Sebeck prescribed moist heat and muscle relaxing pills.

In October or November 1961 plaintiff began having numb feeling under his rib cage. He testified: "Father thought it was some nerve irritation out of my back and shoulders." No objections were made to this testimony. Soon thereafter plaintiff experienced numbness in his side, hands and feet. Doctor Schneider was ill at the time of trial and did not testify.

In January 1962 plaintiff visited Doctor Bakody at Des Moines about his complaints and was put in the Mercy Hospital for treatment. Exhibits 5 and 7 are statements for care and treatment at that time. Plaintiff testified:

"Q. I hand you Exhibit 7 and ask you to identify it if you can. A. It is a bill from Doctor Bakody for $130 for his fees; that's all; for his fees.

"Q. Would you state whether or not you went to see him for your injuries sustained in this accident? A. Yes."

The trial court sustained appellants' and Swaney's objections to the last question but no motion to strike the answer was made. The ruling did not have the effect of striking the testimony. It is a part of the record. Kuiken v. Garrett, 243 Iowa 785, 804, 51 N.W.2d 149, 160, 41 A. L. R.2d 1397; Correll v. Goodfellow, 255 Iowa 1237, 1247, 125 N.W.2d 745, 751, and citations.

Plaintiff testified he went to the Mayo Clinic at the request of Doctor Schneider, his father.

Plaintiff's testimony includes: "I received no other injury which would have contributed to this" and "This is a condition I have been conscious of almost continuously since the time of this accident. I did not have any symptoms of this condition at all prior to the accident."

Doctor Sebeck testified the conditions he found were consistent with the history of the accident.

Dr. Ralph L. Bircher diagnosed it as "bronchial plexus neuritis due to trauma of lower cervical and upper dorsal area". He testified: "This is consistent with being hit in the rear by a truck." and "He hurts because his head was snapped back and the muscles and ligaments were disturbed in the process." He had reexamined plaintiff a few days before the trial.

Appellants argue the record fails to generate a jury question as to causal connection of plaintiff's condition of numbness with the accident and his injury. They contend expert medical testimony that plaintiff's condition was the "probable" result of the accident was required. We have so held under some state of facts. In Bradshaw v. Iowa Methodist Hospital, 251 Iowa 375, 101 N.W.2d 167, where plaintiff claimed he injured his back in a fall at the hospital, we held the doctor's testimony "there could be" causal connection between the fall and plaintiff's injured back standing alone, in view of a prior injury to the back, was not enough to carry the question to the jury. Bradshaw was being treated for an injured back when he fell at the hospital.

In Barnes v. Bovenmyer, 255 Iowa 220, 229, 122 N.W.2d 312, 317, a suit for malpractice in the treatment of an injured eye we say: "The matter of causal connection between defendant's negligence and loss of plaintiff's eye is not within the knowledge and experience of ordinary laymen. It is a question upon which only a medical expert can express an intelligent opinion. It is a question essentially within the domain of expert testimony." Only a medical expert could form an opinion of whether the original injury or negligence in treatment caused the loss of plaintiff's eye.

However, when expert evidence of possible causal connection is coupled with other testimony, nonexpert in nature, that plaintiff was not afflicted with any such condition prior to the accident, then the question is for the jury. Rose v. John Deere Ottumwa Works, 247 Iowa 900, 76 N.W.2d 756; Chenoweth v. Flynn, 251 Iowa 11, 99 N.W.2d 310; Bradshaw v. Iowa Methodist Hospital, supra. See also annotation, 135 A. L. R. 516, 532, et seq.

We believe the question of causal connection was for the jury. The trial court did not err in admitting exhibits 5, 7

and 9. Instruction 17 limits plaintiff's recovery to damages shown by a preponderance of the evidence to have been caused by the collision in question.

VI. Several of appellants' assigned errors relate to the trial court's failure to specifically instruct certain items were not being submitted to the jury. Plaintiff's evidence refers to his claim for permanent injury, damages and future medical treatment and expense. On appellants' motion these items were withdrawn by the court in the absence of the jury.

In instruction 15 the court stated: "Plaintiff asks $110.54 for car repair; $908.75 for loss of earnings; $1257.65 for expense of care and treatment; and $74,723.06 for past and future pain and suffering."

In instruction 18 the court stated: "You can only allow such damages, if any, as are proved by a preponderance of the evidence. You cannot allow more for the respective items than the sums asked, nor can you consider any items save the ones I have mentioned."

We believe the instructions were sufficiently clear that any claim for future loss was limited to future pain and suffering.

 Appellants also contend the court erred in not advising the jury the mortality table had been withdrawn.

Doctor Sebeck in reference to plaintiff's condition and disability testified: "This is the same condition that I found three years before. I felt he had not changed to lower his disability from that listed after his examination on May 8, 1961. I don't expect these conditions to last forever but it will continue in the future. It has lasted for three years and I would say it will probably last three years more."

Doctor Bircher testified: "I feel that Mr. Schneider's condition will continue for an indefinite period of time in the future."

In Ruud v. Grimm, 252 Iowa 1266, 1275 to 1277, 110 N.W.2d 321, 326, 327, we analyze many authorities which consider the proposition of whether mortality tables are admissible where a physician testifies a claimant will suffer from the injury for an indefinite period in the future. They are not repeated here. We held in Ruud and hold here the mortality table was admissible. Appellants have no valid basis of complaint. The error in with-

drawing the mortality table was against plaintiff, not against appellants.

VII. Appellants assert the trial court committed many errors in submitting plaintiff's case against Swaney. They argue such errors were prejudicial against them as they defeated their claim for indemnity. We find no such errors.

The trial court submitted plaintiff's claim against Swaney on two theories, (1) Swaney retained some ownership in the truck and was therefore liable for any negligence of Quick and (2) negligently releasing the vehicle with defective brakes. Our study of the instructions discloses the trial court carefully separated and submitted each theory to the jury. We find no errors in the court's instructions on plaintiff's claim against Swaney.

Appellants throughout the trial and here take the position the sole proximate cause of the accident was faulty brakes, that Quick had no knowledge thereof until just prior to the accident and that he was faced with a sudden emergency not of his own making. The trial court recognized appellants' contention and submitted the legal excuse doctrine to the jury. The verdicts clearly show the jury did not agree with one or more of appellants' contentions.

The trial court instructed that if Quick was faced with a sudden emergency not of his own making as to faulty brakes immediately before the collision the doctrine of legal excuse would apply to that specification. Appellants claim the court erred in indirectly applying the doctrine to plaintiff's claim under division one against Swaney. We do not agree. Under division one plaintiff sought to hold Swaney because Quick drove with his permission. Legal excuse was not made applicable under plaintiff's second division against Swaney.

VIII. Appellants' position that the sole proximate cause was faulty brakes caused them to request several instructions. They assign many errors because the trial court failed to give these requested instructions. We have already held their position is untenable.

IX. Appellants' assignments of error on their claim for indemnity against Swaney are argued mostly on the same as-

sumption of established facts as asserted against plaintiff's claim. They argue that if Quick is liable then as a matter of law they are entitled to indemnity against Swaney. We do not agree.

The record discloses a sharp dispute as to ownership of the truck on the day Quick drove it off Swaney's used car lot. The written agreement between Fletcher and Swaney plus the evidence Fletcher had obtained a transfer of title to the truck the day before the accident was sufficient for a jury finding that Swaney had no ownership in it on the day of the accident.

Section 321.493, Code, 1958, provides:

"In all cases where damage is done by any motor vehicle by reason of negligence of the driver, and driven with the consent of the owner, the owner of the motor vehicle shall be liable for such damage.

"A person who has made a bona fide sale or transfer of his right, title, or interest in or to a motor vehicle and who has delivered possession of such motor vehicle to the purchaser or transferee shall not be liable for any damage thereafter resulting from negligent operation of such motor vehicle by another, but the purchaser or transferee to whom possession was delivered shall be deemed the owner. * * *."

If the jury found Swaney was not the owner of the truck and that Quick knew of the defective brakes then Swaney would not be liable. These several fact questions were carefully submitted to the jury.

The record is undisputed that when automobile dealers buy and sell used vehicles at wholesale they are purchased on the basis of "as is" and "where is". The jury could have found Quick as Fletcher's agent took the truck accordingly. This issue also was carefully submitted by the court.

Swaney and Fletcher had prior dealings. Each knew the established custom between dealers. Quick, however, argues he was not aware of the custom and it should not be considered as to him. We believe the trial court properly rejected this contention. Swaney dealt with Quick only as Fletcher's representative. Fletcher's knowledge of the trade custom was imputed to Quick.

Restatement, Agency, section 10, comment c, states: "Unless he indicates otherwise, a business agent represents that he under-

stands the usages of the business in which he is employed." Quick makes no claim he indicated to any of Swaney's employees any lack of knowledge of the trade usages.

X. The factual issues of whether Swaney agreed the vehicle would be roadworthy or made other express or implied representations of the condition of the truck as well as appellants' claim the sole proximate cause of the accident was faulty brakes were submitted to the jury. A jury finding against appellants on these issues would defeat their claim for indemnity against Swaney. The verdict indicates such a finding.

XI. Appellants argue the verdict against them should have been set aside and a new trial granted in the interest of justice.

As pointed out in appellants' brief, in Webster v. City of Colfax, 250 Iowa 181, 185, 93 N.W.2d 91, 93, we say: "We have often said the trial court should grant a new trial where it clearly appears that the verdict does not effectuate substantial justice or that the jury from any cause clearly has failed to respond to the real merits of the controversy." See also In re Estate of Murray, 238 Iowa 112, 115, 26 N.W.2d 58, 60, and citations.

In ruling upon motions for new trial the trial court has broad but not unlimited discretion in determining whether the verdict effectuates substantial justice between the parties. Citation of authority is unnecessary. See Rule of Civil Procedure 344(f)3.

In the order denying new trial the experienced trial court stated: "Upon careful consideration of each ground of the motion, the Court concludes that Quick and Fletcher received a fair trial and that the verdict should stand. Counsel has, with customary thoroughness and resourcefulness, enumerated many grounds. But perfect justice is not attainable in this world. Substantial justice is the most that can be hoped, and the trial and the verdict appear to accomplish this end."

We are not persuaded the trial court erred in overruling appellants' motion for new trial.

We have discussed what we believe are the most important assigned errors. The others do not require separate consideration. Each and every assigned error has been studied. We find no reversible error.

The judgment below must be and it is affirmed.—Affirmed.

All JUSTICES concur.