JACK TRUE, appellee, v. DON LARIMORE and HARRIET LARIMORE, d/b/a AVOCA LANES, appellant.

No. 51051.

(Reported in 123 N.W.2d 5)

Appeal from Pottawattamie District Court—BENNETT CULLISON, Judge.

JULY 16, 1963.

Smith, Peterson, Beckman & Willson, of Council Bluffs, and Wyland & Rock, of Avoca, for appellants.

Manning Walker, of Avoca, for appellee.

SNELL, J.—This is an action at law by a patron against the proprietors of a bowling alley for injuries sustained in a fall on the bowling lane approach.

I. Except for one matter relating to statements by one of the defendants hereinafter mentioned the facts appear without dispute.

On January 19, 1959, and for some time prior thereto defendants, who are husband and wife, operated a bowling alley and snack bar known as Avoca Lanes. Plaintiff, an experienced but amateur bowler, was a member of a regular organized team and bowling league.

He started bowling at Avoca Lanes in 1955 and bowled regularly after that date.

There are six bowling lanes or alleys in Avoca Lanes numbered one to six inclusive. Avoca Lanes had been inspected and approved by a representative of the American Bowling Congress.

On January 19, 1959, the date of plaintiff's injury, six different teams bowled in the afternoon and twelve teams in the evening. It was estimated, but not controverted, that during the afternoon 24 bowlers who used the alleys would deliver approximately 1080 balls.

Beginning at 6:45 in the evening a ladies' league started bowling. There were six teams with five on each team and again it was estimated that the bowlers on the ladies' league between 6:45 and 9 p.m. would deliver approximately 1440 balls.

At 9 p.m. the men's competition began with 30 members, including plaintiff, participating, and again it was estimated that during the men's competition 1170 balls would be delivered.

Plaintiff while in the middle of the third frame of his third game fell while delivering his bowling ball. Plaintiff apparently at the time gave little thought to his fall because he continued bowling for the rest of the evening. It subsequently developed that he had injured his hand in the fall and that medical and surgical treatment was required and some disability resulted.

In connection with his fall plaintiff testified:

"A. I got up to bowl and it was the first, oh, the first ball that was thrown that particular frame and as I went up to the foul line to slide, when I left my sliding foot stopped dead still and I was throwing the ball, I let go of the ball and I fell on my out-stretched hand.

454

"Q. Did your sliding foot stick? A. It stuck.

"Q. Came to an abrupt halt? A. It stuck tight, yes. Stopped."

Plaintiff also testified as follows:

"Q. Now, Mr. True, after you fell, what did you do next? A. I returned to the end of the approach and I scraped my left shoe off which is my sliding shoe.

"Q. Did you throw another ball? A. Yes."

Facing the alleys, but not as a part thereof, there is a space where the bowlers and team members sit and where the scoring record is kept on tables provided for the use of scorekeepers. This area has an asphalt type tile floor and is at a lower level with a step up to the alleys themselves.

It is the claim of the plaintiff that his bowling shoes picked up beads of wax from this seating area and that the wax on his shoes caused him to fall and suffer injury.

Plaintiff admits that at the time he fell, and during the evening of his fall, he did not know what caused him to fall. He now relies on hindsight based on statements he attributed to one defendant. Plaintiff quotes one of the defendants in subsequent conversation as follows:

"Don said the only thing that he could figure out was the wax he had on his floor at the time would stick to my shoe and that's what caused me to fall."

This conversation took place late one evening at plaintiff's tavern with plaintiff and his wife and the defendants, husband and wife, present. At that time plaintiff was complaining about the wax on the tile floor of his tavern and his difficulty in keeping it clean and removing the old wax. Defendant (husband) is quoted as saying that he had some wax remover which he used at the bowling alley. Defendant went and got a sample and demonstrated it and it worked well. From other testimony it appeared that the wax remover so demonstrated was the same product that defendant had been using prior to plaintiff's fall. Defendant was quoted by plaintiff as saying that he did not remove the wax on the floor for the simple reason that the wax he had on was not the proper kind so he later removed the wax and then used a different product.

Plaintiff's wife testified in substance that she overheard such a conversation but the making of such statements was denied by both defendants.

Whether or not the statements, if made, referred to a time prior to plaintiff's fall or later in the year does not appear. All plaintiff claimed is that it was sometime during the year 1959.

During cross-examination plaintiff testified as follows:

"Q. Now, during all of the time that you bowled there at Avoca Lanes, they were well kept alleys and premises? A. Yes.

"Q. And on this night of January 19, 1959, there was nothing on the floor adjacent to the alleys or on the alleys that you observed that caused you to fall? A. No.

"Q. In other words, there was no unsafe condition that you observed on January 19, prior thereto? A. No.

"Q. And the defendants had a mat down there on the floor where you could scrape your feet before you got on the alleys to address the ball? A. Yes.

"Q. Did they also sandpaper? A. Yes.

"Q. So you could clean off your shoes before you delivered the ball? A. Yes.

"Q. Did you use the scraper or the sandpaper before you fell? A. No.

"Q. Were you wearing your own bowling shoes? A. Yes.

"Q. In other words, there was no defect in the premises that you observed at the time and immediately prior to the time you fell? A. No."

Defendants had operated Avoca Lanes since January 1958. The lanes had been inspected and approved. There is no evidence whatsoever that anyone had ever complained about conditions or maintenance.

According to plaintiff and his witnesses the alleys were equipped with sandpaper and mats for use in cleaning the soles of shoes before starting to deliver the ball "so as to avoid as far as possible anybody falling." Plaintiff before his fall did not clean his shoes.

The secretary of the bowling league testifying for plaintiff said it was customary for bowlers to inspect their shoes and scrape their feet on the mat or sandpaper before delivering the

ball. He also said bowlers fall from various causes. The same witness said that once an unidentified lady bowler on some previous occasion had showed him little beads of a hard substance on her shoe. The witness made no investigation as to what the beads were. He apparently thought nothing of it for he did nothing. "A couple times" when inspecting his own shoes he found "The same little hard beads." There is no evidence as to what these beads were nor where they came from.

During the period of slightly more than the one year of defendants' operation some bowlers had fallen while delivering a ball. There was no testimony as to the cause. Plaintiff's witnesses indicate there was nothing unusual about an occasional fall. There had been no injuries. On January 19, 1959, 84 different bowlers used the lanes without incident or complaint. One bowler other than plaintiff fell but there was no attempt by plaintiff to show why. Defendants' evidence described him as "clumsy."

There was nothing obvious nor apparent to indicate anything wrong. There was nothing wrong with the bowling lane nor the approach to the foul line. There was nothing to indicate anything unusual about the tile floor in the seating area. Defendants had never been told of any trouble. Plaintiff did not use the equipment provided to clean his shoes before bowling. There is nothing except a statement attributed to defendant (husband) based on hindsight conjecture and speculation to even suggest the cause of plaintiff's fall.

II. Plaintiff's petition did not contain the usual allegation of freedom from contributory negligence. The petition, however, did say "that at said time and place while plaintiff was *lawfully* and *properly* using said bowling alley, as invitee on said premises" he fell by reason of the unsafe condition of said alley. (Emphasis supplied.)

Subject to certain exceptions not material here the burden rests on a plaintiff in a negligence case to plead and prove freedom from contributory negligence. It is preferable to make the specific allegation and rather dangerous to do otherwise but the usual method of using exact words is not exclusive.

As a matter of pleading the plaintiff's petition was suffi-

cient. Wilson v. Corbin, 241 Iowa 593, 605, 41 N.W.2d 702. If plaintiff was properly using the bowling alley as alleged he could not have been contributorially negligent. It was a negative approach to an affirmative and essential element. The weakness in the petition would not in this case require a reversal for lack of specificity but essential elements should be so pleaded as to be apparent without search.

III. Plaintiff as a patron was an invitee on defendants' premises. Actions by invitees are quite common and the law relative thereto is well settled. We have recently, in a number of cases, reviewed the law applicable to invitees.

In Wendling v. Community Gas Co., 254 Iowa 1158, 120 N.W.2d 401, the law was again reviewed and authorities quoted. The law as stated in the Restatement of Torts, Volume 2, section 343, and previously quoted in our cases is again stated in Corkery v. Greenberg, 253 Iowa 846, 849, 114 N.W.2d 327, 329, as follows:

" 'A possessor of land is subject to liability for bodily harm caused to business visitors by a natural or artificial condition thereon if, but only if, he (a) knows, or by the exercise of reasonable care could discover the condition which, if known to him, he should realize as involving an unreasonable risk to them, and (b) has no reason to believe that they will discover the condition or realize the risk involved therein, * * *.' "

Actions involving bowling alleys are not as common as those arising from other places of business but are not unknown to the law.

Fagan v. Williamsport Lodge No. 145 of Loyal Order of Moose, 361 Pa. 446, 447, 64 A.2d 805, 806, was a bowling alley case. Plaintiff fell while bowling. He claimed his fall was due to the fact that his foot struck a foreign substance of a sticky nature on the runway. We quote:

"In order to establish liability against the proprietor of a bowling alley because of an alleged defective spot on the approach to the runway of an alley it must be shown that the owner had actual or constructive notice of the presence of the spot, or that he failed to use such care as those employed in like kind of business ordinarily exercise or should exercise."

There was no testimony that defendant had notice of any defect, no person had complained, the spot was not visible, friends of the plaintiff who had been using the approach on the same alley for at least three hours before the injury did not even discover it. The Pennsylvania Court held plaintiff's showing insufficient to establish negligence.

McGillivray v. Eramian, 309 Mass. 430, 35 N.E.2d 209, 141 A. L. R. 1313, was a bowling alley case with a verdict for plaintiff. The situation was not at all comparable to the case at bar. There the plaintiff, a patron, was delivering his bowling ball about a foot back of the foul line and with his hand about an inch from the floor. His finger was pierced by a sliver of wood sticking up from under a nail in the floor. "The wood was rotten or something, the nails were pulled out * * * the boards were warped or sprung from the foundation." The court held that a jury could find that the conditions were not of recent origin and that reasonable care had not been taken in the maintenance of the alley. After the accident the cause thereof was immediately apparent.

In Lenger v. Modern Recreations, Inc., Mo. App. (not published in State Reports) 203 S.W.2d 100, the plaintiff, a lady, fell on a waxed or oiled floor while changing from her bowling shoes to street shoes. It was said that the law does not place upon the appellant the duty of making his place of business absolutely safe so that persons could not slip thereon. Neither is it negligence per se to maintain a bright, smooth and shiny waxed floor. Plaintiff's theories that an oily, greasy or waxy spot found on her dress three and one-half hours after her fall proved negligence were said to be too farfetched for serious consideration.

The most recent bowling alley case cited or coming to our attention is Davanti v. Hummell, 409 Pa. 28, 185 A.2d 554, decided November 13, 1962. In that case plaintiff was injured in a bowling alley fall when her foot stuck as she approached the foul line. Plaintiff was the first bowler in her group and she fell in delivering her first ball. Her left foot encountered a substance on the runway which held her for an instant and she fell forward on her hands and knees. A member of the

league helped her to her feet and she immediately examined the floor to determine the cause of her fall. She found a sticky and waxy substance about the size of a silver dollar. She scraped her feet over it confirming that it was of an adhesive consistency. One of the members of the league immediately informed the management and an attendant came at once to wipe up the substance with a piece of steel wool. The Pennsylvania Court concluded that the evidence indicated that the offending substance had been on the floor long enough to enable the proprietor to have actual or constructive notice thereof. The facts in the Pennsylvania case are not comparable to the case now before us. Here, the plaintiff has no evidence except speculation as to the cause of his fall, no evidence of notice to the proprietor, either actual or constructive, before or after the fall.

Cases from other jurisdictions are in general accord with the Iowa rule as to invitees. We will mention only a few.

In Ilgenfritz v. Missouri Power & Light Co., 340 Mo. 648, 101 S.W.2d 723, plaintiff, a customer, slipped and fell on a highly polished and slick waxed floor. The floor was not level because of the weight of merchandise displayed thereon.

1500 to 2000 people came into the office (display room) every month with the floor in the same condition. No one had fallen except one man with snow on his shoes.

The court stated the rule that the owner or occupant of buildings who invites others to go there owes such persons the duty to exercise ordinary care to have the premises in a reasonably safe condition.

The court held that negligence is not proved by an isolated occurrence but must be predicated on what should have been anticipated and not merely on what happened. The court said it could not permit a verdict to be based on mere speculation and conjecture.

In McCollum v. Winnwood Amusement Co., 332 Mo. 779, 787, 59 S.W.2d 693, 697, plaintiff was injured on a slide at an amusement park. The case involved an alleged faulty construction of the slide. The court said the fact of plaintiff being injured did not warrant a finding of actionable negligence. We quote, "It is a trite saying that a person's 'hindsight' is often

better than his foresight, which merely means that a person, after a thing has happened, can see error or mistake or at least something which, if it had been done, would have prevented a bad result. However, negligence which imposes liability must result from a faulty or defective foresight. Negligence is predicated on what should have been anticipated, rather than what happened."

In J. C. Penney Co. v. Robison, 128 Ohio St. 626, 630, 193 N.E. 401, 403, 100 A. L. R. 705, plaintiff slipped on an oiled floor. The general rules as to the duty to an invitee were stated and then it was said:

"It must not be lost sight of that under the law the invitee who accepts an invitation owes a reciprocal duty to the invitor while on the invitor's premises to exercise ordinary care to avoid injuring himself. In other words, the acceptance of an invitation, express or implied, does not relieve the invitee of the duty to exercise ordinary care under all the attendant facts and circumstances."

The opinion concludes, "Under our law it is just as pernicious to submit a case to a jury and permit the jury to speculate with the rights of citizens when no question for the jury is involved, as it is to deny to a citizen his trial by jury when he has the right."

Cases cited by the plaintiff other than those we have mentioned are not factually comparable.

IV. Defendants were not insurers of plaintiff's safety nor does the mere fact that an accident happened, of itself, create liability. Chenoweth v. Flynn, 251 Iowa 11, 15, 99 N.W.2d 310.

The trial court instructed the jury, with no exception taken thereto, in part as follows:

"You should first consider and decide whether or not the defendants were negligent in failing to keep their premises in a reasonably safe condition, and warn or protect the plaintiff against any hidden defects or dangers therein. It was the duty of the defendants, and each of them, to maintain their place of amusement in a reasonably safe condition. That is, they must exercise reasonable care and prudence in maintaining said prem-

ises in such a condition as to avoid exposing the plaintiff to unreasonable risks or hazards, which in the exercise of ordinary care may be reasonably foreseen or anticipated."

We find no evidence to support a verdict under this instruction.

In considering whether defendants' motion for directed verdict or motion for judgment notwithstanding the verdict should have been sustained we give to plaintiff's evidence the most favorable construction it will reasonably bear. Rule 344(f)2, Rules of Civil Procedure.

This does not mean that reason is to be discarded and verdicts allowed when supported by nothing but conjectural hindsight.

█ Here the premises were in good condition with no complaint whatsoever as to maintenance. Facilities were provided (mat and sandpaper fastened to the floor) to eliminate the very thing that plaintiff now says caused his fall.

Plaintiff cannot neglect to use the facilities provided and then support a verdict on the speculation that some negligence of defendants in the maintenance of an adjacent area was the proximate cause of his fall.

Plaintiff's evidence was too weak and lacking in essential elements to support a verdict. The motion for judgment notwithstanding the verdict should have been sustained.

The case is reversed and remanded with instructions to enter a verdict for defendants.

Plaintiff's printing costs are excessive. We make no order relative thereto as all costs will be taxed to plaintiff.—Reversed.

HAYS, THOMPSON, LARSON, MOORE and STUART, JJ., concur.

GARFIELD, C. J., and THORNTON, J., dissent.

PETERSON, J., takes no part.