EARL AUGSPURGER, appellant, v. WESTERN AUTO SUPPLY COMPANY, appellee.

No. 51667.

(Reported in 134 N.W.2d 913)

MAY 4, 1965.

Jack W. Rogers, of Des Moines, for appellant.

A. Roger Witke, of Des Moines, for appellee.

STUART, J.—Plaintiff was injured when his leg was struck by a metallic particle while defendant's employee was attempting to remove a steel bearing from an automobile axle with a hammer and chisel. Suit was brought and the trial court sustained defendant's motion for directed verdict on the ground that plaintiff had failed to prove actionable negligence. Plaintiff appealed. We affirm.

Plaintiff went into defendant's service department to talk to the shop foreman about repairing his car. He heard pounding at the east or far end of the room. He walked to the stall from which the sound was coming and found the foreman trying to remove a steel bearing from a Ford axle with a cold chisel and a ball peen hammer. One end of the axle was on a hoist and a young man was holding the other end on the floor. He did not stand as close to the foreman as several other men who were also watching the work. After engaging in general conversation for about five minutes, he told the foreman what he wanted. He replied: "Wait until I get this damn bearing off here and I will tell you."

The foreman "had the hammer in one hand, the chisel in the other hand and the young fellow seemed to be holding the axle up * * * because the axle seemed to be hopping around when it was propped up and he would whack away at that bearing."

Plaintiff described the manner in which the accident happened as follows:

"Q. Can you describe the manner of the blows when you first got there, the use of the hammer with respect to the blows? A. Well, I would say like a changed [same?] blow anybody would do if he was using a hammer and a chisel.

"Q. Tell us how it appeared to you as you stood there. A. It seemed the blows got harder and the noise sharper.

"Q. Can you tell us in the interval that the heavier blows began to strike upon the chisel that were being struck? A. Just almost immediately."

He also stated: "After awhile Bob got a little disturbed and he seemed to be hitting harder all the time and I said 'Oh, my God, Bob, something hit me on the leg'.".

On cross-examination, he testified:

"Q. Now, Mr. Augspurger, is it your testimony, * * * that when you first entered the Western Auto Store that Mr. Mc-Anelly was not hitting the chisel hard? A. Well, I can't say that he wasn't hitting the chisel hard. You always hit a chisel hard. There is no object in hitting it if you don't hit it hard. But later on he hit it harder. As the thing didn't move, the only thing to do was hit it harder.

"Q. But you observed that he was hitting it hard? A. There was a difference in the power with which he was hitting it.

"Q. And you observed this? A. Yes, I did."

I. Plaintiff's testimony was the only evidence offered on the matters at issue here. We do not believe this testimony and the inferences which may reasonably be drawn therefrom, viewed in the light most favorable to plaintiff, are sufficient to generate a jury question on defendant's negligence.

Each case must, of course, be governed by its own facts. However, two other Iowa cases involving the same type of accident are helpful in illustrating the deficiencies in plaintiff's case. In Reynolds v. Skelly Oil Co., 227 Iowa 163, 173, 287 N.W. 823, plaintiff's eye was injured by a particle flying from a hammer while it was being used to hit a tire iron. We held there that the trial court should have directed a verdict for defendant. In discussing the evidence we said at pages 173, 174:

"There is no evidence as to the force of the blow of the hammer or of his method of using it; neither is there any evidence as to the method used or the tools and appliances used to show that they were not the usual and ordinary tools and usual and ordinary methods. In fact, the evidence shows to the contrary. We have set out all the evidence bearing on this subject. No one

testified that there were any better or safer tools or method of using them or that there was any safer place in which to change this tire; neither is there anything in the nature of the tools or the method of using them or the place where they were used of such an inherently dangerous character as to call for a warning on the part of Watson. It was a simple ordinary operation, perhaps, undertaken many hundreds of times daily throughout the country as everyone knows. Any danger inhering therein could not help but be as equally apparent to the plaintiff as to the defendant Watson. Whatever peril there was was as obvious to one as to the other and the plaintiff most certainly voluntarily placed himself in whatever position of peril that existed and would be as equally guilty of negligence as the defendant and this would also defeat his recovery for it was incumbent on him to show his freedom from contributory negligence."

The only material distinction in the evidence here is the testimony of plaintiff that the foreman kept striking harder blows with the hammer. The evidence referred to shows plaintiff did not consider them to be unusually hard and in fact said it was the only thing to do. There was no evidence of a sudden blow or series of blows struck with unusual force in anger or with impatience. This additional evidence is not enough to distinguish the case from Reynolds.

When we compare the evidence here with that in Stafford v. Gowing, 236 Iowa 171, 18 N.W.2d 156, the shortcomings of plaintiff's case become readily apparent. There plaintiff's eye was injured by a chip of cast iron flying from a piece of soil pipe as it was being cut with a chisel. Direct evidence was offered that cast iron characteristically shatters and chips when chiseled. Defendant knew this and plaintiff did not. It was not a matter of common knowledge. The light was such that plaintiff could not see the flying chips. There was also evidence defendant employed an improper method of cutting the pipe. He did not claim the operation was such that a warning was not required, but attempted to justify the failure to warn by testifying he thought plaintiff was standing behind him and was shielded by his body. This was in dispute.

No such evidence was introduced here and the case is clearly

distinguishable on the facts from Stafford v. Gowing. To find a jury question here, we would have to infer many facts and circumstances which were supported by direct evidence in the Stafford case. The evidence does not justify such inferences.

██ ██ II. Plaintiff urges the application of the doctrine of res ipsa loquitur to this case. The underlying reason for the rule is " 'that the chief evidence of the true cause * * * is practically accessible to [defendant] but inaccessible to the injured person'." Eaves v. City of Ottumwa, 240 Iowa 956, 972, 38 N.W.2d 761, 11 A. L. R.2d 1164; Frost v. Des Moines Still College, 248 Iowa 294, 79 N.W.2d 306. "It is based on the theory that he who has charge of the thing that causes the injury either knows the cause of the accident or has the best opportunity of ascertaining it." Savery v. Kist, 234 Iowa 98, 103, 11 N.W.2d 23. Here plaintiff testified in detail about the accident and its cause. He even knew the type of chisel and hammer used and the kind of axle involved. The evidence was equally accessible to both parties. There were no unknown factors. As we said in Eaves v. City of Ottumwa, page 972 of 240 Iowa: "The underlying reason for the application of the res ipsa rule is therefore not here present."

III. Since we have held there was no proof of actionable negligence we need not consider the question of contributory negligence as a matter of law.—Affirmed.

All Justices concur except Hays, J., not sitting.