MARY H. DORCAS, executrix of estate of Byron M. Dorcas, deceased, appellant, v. FLOYD AMBROSE AIKMAN, appellee.

No. 52022.

JUNE 14, 1966.

Barnes, Wadsworth, Elderkin, Locher & Pirnie, of Cedar Rapids, and Sebasta & Kuehnle, of Mechanicsville, for appellant.

James T. Remley, of Anamosa, and Keyes, Crawford & Bradley, of Cedar Rapids, for appellee.

MOORE, J.—This is a damage action for the death of Byron M. Dorcas caused when his truck was struck from the rear by defendant's automobile September 11, 1961, on Highway 38 approximately three miles north of Tipton in Cedar County. From judgment on verdict for defendant plaintiff has appealed.

On a prior appeal from a verdict and judgment in favor of defendant we reversed because of failure to properly instruct on the question of decedent's contributory negligence. See Dorcas v. Aikman, 256 Iowa 308, 126 N.W.2d 298. We do not have the same problem on this appeal.

Plaintiff asserts the trial court erred in: (1) Giving instructions 9, 10 and 17; (2) failing to give plaintiff's requested instructions 2, 5, 7 and 8; (3) refusing to submit last clear chance; (4) not submitting improper speed under the circumstances and (5) not submitting her allegation defendant was driving with defective brakes.

The facts here are substantially the same as in the first trial. About 9:30 a. m. September 11, 1961, Byron M. Dorcas, age 53, was driving his 1949 Chevrolet truck south on Highway 38 and started to slow down about 200 feet north of his farm lane. As he was turning to the right or stopped near the entrance to the lane, his vehicle was struck from the rear by defendant's 1945 Studebaker knocking the truck over on its left side. Mr. Dorcas was thrown out and the truck rolled over on him causing his death. Stanley Rose who farmed with Dorcas was in another truck stopped in the lane near the highway and saw the collision. His testimony given at the first trial was read into the record on the second trial. He testified he first observed Dorcas 200 yards north of the lane on the west side of the road starting to slow down; as he approached the lane Dorcas started to make his turn to the right and then the truck was struck from the rear by defendant's automobile. He further testified he did not see defendant's vehicle until the truck was approximately 100 yards from the lane, he supposed defendant was then driving at moderate speed, he did not observe any attempt by defendant to stop until just a few seconds before the collision, he was unable to estimate defendant's speed at the time of collision and after the impact defendant's automobile went across the center line to the east and collided with another vehicle coming from the south. Rose stated he observed no sudden slowing down or stop of the truck. He saw no signal light working on the truck.

Plaintiff read into the record portions of defendant's deposition, including the following:

"Q. When you first saw him [Dorcas] how far was he ahead of you? A. Oh, probably a third of the distance from the hill to where he turned off. * * *

"Q. Would you know, Mr. Aikman, how far that would be in feet? Two or three hundred feet? A. No.

"Q. Could you give me your best judgment on that? A. Well, it could be a quarter of a mile. If it was a quarter of a mile that should be 500 feet or more.

"Q. How far was he in front of you when you saw him slow down? A. Oh, he was probably that far ahead of me then.

"Q. He was about the same distance ahead of you at the time you saw him slow down as he was when you first saw him? A. Approximately.

"Q. And you think maybe 500 feet? A. Yes, I would say that much at least.

"Q. How far was he from the lane when you saw him start to slow down? A. That would be hard to say.

"Q. I know it is, Mr. Aikman, but give us your best idea. A. He wasn't too far.

"Q. Well, 50 feet, 100 feet? A. Oh, about 100 probably.

"Q. About 100 feet when you saw him start to turn in? A. Yes, from the time he started slowing down and turned in.

"Q. And at that time you were about 500 feet at least behind him, weren't you? A. Well, somewhere in there.

"Q. Did you start to stop, yourself, at that time? A. I slowed up figuring on going up—slowing up enough for him to get off the pavement.

"Q. How fast were you going?. A. Well, I wouldn't say much over 60.

"Q. How fast was he going, do you know? A. No, I couldn't say.

"Q. After the time you first saw him when you came up over the top of the hill, down to where you say he turned off, did you make any judgment of his speed? A. No.

"Q. Can you tell us how fast you think he was going? A. I couldn't say how fast he was going. I was judging my speed according to his, so I would have room to get behind him without braking too hard.

"Q. When you were at least 500 feet from him you knew that he was slowing down and was going to turn, didn't you? A. I didn't know he was going to turn right at the time he started slowing down.

"Q. You knew he was either going to stop or turn, didn't you? A. I figured he was going to do something of the sort.

"Q. And at the time you struck him you were entirely on the pavement, weren't you? A. Yes.

"Q. And what part of the truck did you hit? A. The back end under the box; under the box.

"Q. Did that turn him over—? A. It must have."

As cross-examination defendant read into the record other portions of his deposition, including:

"Q. As I understand it, this truck came to a complete stop? A. That is right.

"Q. And was on the pavement? A. On the pavement.

"Q. Before this truck came to a complete stop did he to your knowledge give any signal at all? A. No.

"Q. To your knowledge did any signals flash on his truck? A. No.

"Q. Did he give you any hand signal or any indication that he was going to stop? A. No.

"Q. And the first thing you knew, Boom, he had stopped, and that was it? A. Yes."

Iowa highway patrolman Richard Ward was called to the scene. He testified he checked the turn signals and stoplights on the truck and none would flash. On inspection he found the wires which ordinarily connect to the rear signals were disconnected, hanging down and caked with dried mud. The hole where the wires would ordinarily go was also caked with dried mud. He expressed the opinion the lights were not disconnected as a result of the accident. There was no apparent visible damage to them. The sheriff gave substantially the same testimony, including: "The right turn light wire was disconnected, covered with mud and dirt. The hole the wire would go into on the right turn light itself was covered with mud, or hardened mud, which had apparently been on there for some time. The end of the disconnected wire was covered with hardened mud also. All the lights were covered over with dirt, and none of them worked when checked."

Ward identified photographs taken soon after the accident and described a skid mark made by defendant's right front wheel. It started just off the west edge of the pavement and continued southeasterly 83 feet to the point of impact which was 4 feet 7 inches east of the west edge of the pavement. From the point of impact to where defendant's automobile stopped, a distance of 57 feet, there were unbroken marks on the pavement. Ward observed no other skid marks. Over objection he testified

the law required a vehicle under 5000 pounds be equipped with brakes capable of stopping the vehicle traveling 20 miles per hour within 30 feet.

The sheriff testified he observed the 83-foot skid mark made by defendant's right front wheel but found no others.

■ I. Plaintiff asserts the trial court erred in giving instruction 17. It reads:

"Upon retiring to consider the case, your first duty will be to elect a foreman. Your foreman will act as Chairman. It will be his or her duty to see that discussion is carried on in an orderly fashion; that the issues are fully and freely discussed; and that every juror is given an opportunity to express his or her views. When ballots are taken, the foreman will see that it is done and will sign the form of verdict which accords with your finding. Your verdict must be unanimous.

"The attitude of jurors at the outset of your deliberations is important. It is seldom productive of good for a juror, upon entering the jury room, to make an emphatic expression of his opinion or to announce a determination to stand for a certain verdict. When a juror does this at the outset, individual pride may become involved and the juror may later hesitate to recede from an announced position even if shown that it may be incorrect. You will remember that you are not partisans or advocates, but are judges—judges of the facts. Your sole interest should be to ascertain the truth and do exact justice to both the plaintiff and the defendant in this case.

"When you have reached your verdict, you will notify the bailiff in charge, and return into open court with your verdict, the exhibits, and these instructions."

Plaintiff argues this instruction advises the jury how to deliberate, what their attitude should be, when and how they should announce their determination to arrive at a verdict and thereby enters a field belonging to the jury alone. We do not agree. An instruction relative to duties of jurors is proper. Burton v. Neill, 140 Iowa 141, 143, 118 N.W. 302, 303, 17 Ann. Cas. 532; Armstrong v. James & Co., 155 Iowa 562, 568, 136 N.W. 686, 688. See also annotations, 19 A. L. R.2d 1257.

Instruction 17 contains some of the statements and thoughts

included in the verdict urging instruction we approved in State v. Gillam, 230 Iowa 1287, 1292, 1293, 300 N.W. 567, 569, 570. The statements in instruction 17 are not as strong as some contained in the approved instruction. It contains no suggestion of coercion and does not include the feature of a verdict urging instruction we disapproved in Mt. Hamill State Savings Bk. v. Hughes, 196 Iowa 861, 864, 195 N.W. 589, 590, and the cited cases.

If giving such an instruction after the jury had deliberated several hours, and perhaps were weary, is not reversible error, the inclusion of the instruction in the original charge should not be held improper. The procedure used here is approved in Nick v. United States, 8 Cir., 122 F.2d 660, 674, 138 A. L. R. 791, certiorari denied 314 U. S. 687, 62 S. Ct. 302, 86 L. Ed. 550, and Janko v. United States, 8 Cir., 281 F.2d 156, 167, 168.

II. Plaintiff claims the court erred in instruction 9 by advising the jury the doctrine of res ipsa loquitur applied only if plaintiff's decedent did not observe or know of the approach of defendant's car from the rear and instruction 10 so conflicts with the doctrine of res ipsa as to withdraw that issue from the jury. Instruction 10 states the mere fact a collision occurred and plaintiff sustained damages is not, in itself, sufficient to show either party was negligent.

Instruction 9 is the same as instruction 5.12 and instruction 10 is instruction 2.15 of the Iowa Uniform Jury instructions prepared by a committee of the Iowa State Bar Association and circulated to the bench and bar of Iowa.

Defendant does not concede either instruction is erroneous but argues the doctrine of res ipsa loquitur is not applicable under the record made by plaintiff and therefore no prejudice could result.

██ Under the res ipsa doctrine where injury occurs by an instrumentality under the exclusive control of defendant and the occurrence is such as in the ordinary course of things would not happen if reasonable care had been used; the happening of the injury permits but does not compel an inference that defendant was negligent. Harvey v. Borg, 218 Iowa 1228, 257 N.W. 190; Shinofield v. Curtis, 245 Iowa 1352, 66 N.W.2d 465, 50

A. L. R.2d 964; Edwards v. Des Moines Transit Co., 251 Iowa 163, 99 N.W.2d 920; Ruud v. Grimm, 252 Iowa 1266, 110 N.W.2d 321; Schneider v. Swaney Motor Car Co., 257 Iowa 1177, 1184, 136 N.W.2d 338, 343. It means simply that the facts speak for themselves. It is, therefore, a rule of evidence. Harvey v. Borg, supra; Stites v. Des Moines Transit Co., 249 Iowa 185, 85 N.W.2d 905; Edwards v. Des Moines Transit Co., supra.

■ It is a doctrine of restricted scope ordinarily to be applied sparingly and with caution and only where the facts and demands of justice make its application essential. Shinofield v. Curtis, 245 Iowa 1352, 1361, 66 N.W.2d 465, 471, 50 A. L. R.2d 964; Edwards v. Des Moines Transit Co., 251 Iowa 163, 165, 99 N.W.2d 920, 921; Ruud v. Grimm, 252 Iowa 1266, 1273, 110 N.W.2d 321, 325. Its application depends on the particular facts in each case. Harvey v. Borg, 218 Iowa 1228, 1232, 257 N.W. 190, 193; 65A C. J. S., Negligence, section 220(10).

■ In 38 Am. Jur., Negligence, section 300 says at page 997: "The doctrine does not apply where the agency causing the accident was not under the sole and exclusive control of the person sought to be charged with the injury. If it appears that two or more instrumentalities, only one of which was under defendant's control, contributed to or may have contributed to the injury, the doctrine cannot be invoked."

In Aita v. John Beno Co., 206 Iowa 1361, 1365, 222 N.W. 386, 388, 61 A. L. R. 351, we say: "That the accident was the proximate result of such negligence, rather than of numerous other possible causes, including the negligence of the plaintiff herself, is wholly conjecture. The facts shown are as consistent with other hypotheses, including that of plaintiff's negligence, as with the theory of defendant's negligence. The doctrine of res ipsa has no application to the facts of this case."

■ The facts here are much different from those in Harvey v. Borg and Ruud v. Grimm, both supra, on which plaintiff heavily relies. Neither showed any negligence of plaintiff as part of plaintiff's case. Here it appears without dispute plaintiff's decedent slowed down and changed the course of his vehicle or stopped suddenly on the pavement without giving a signal of any kind. Under such circumstances the accident could have

occurred in the ordinary course of things without lack of reasonable care by defendant.

There are probably other reasons why the res ipsa doctrine should not be applied here. Certainly the evidence fails to show the instrumentality which caused or may have caused the accident was in the exclusive control of defendant.

We hold the doctrine of res ipsa loquitur should not have been submitted to the jury under the facts of this case. We therefore need not consider plaintiff's attack on instruction 9 as no prejudice could result to plaintiff therefrom.

■ III. Plaintiff's attack on instruction 10 is that it amounted to a withdrawal of the doctrine of res ipsa loquitur. Our holding in Division II disposes of this assignment of error. Harvey v. Borg, supra, 218 Iowa 1228, 1232, 257 N.W. 190, 193, says: "It is universally agreed that no inference of negligence arises from the mere fact that a collision occurred." See also Buchanan v. Hurd Creamery Co., 215 Iowa 415, 420, 246 N.W. 41, 45; Armbruster v. Gray, 225 Iowa 1226, 1230, 282 N.W. 342, 344. We find no error in giving instruction 10.

IV. Plaintiff asserts the trial court erred in not submitting her allegation of negligence embodying the doctrine of last clear chance and failing to give plaintiff's requested instruction 2 pertaining to that doctrine.

■ The doctrine of last clear chance applies where there is evidence defendant (1) has actual knowledge of plaintiff's situation, (2) realizes or in the exercise of reasonable care should realize plaintiff is in peril, (3) defendant has the ability thereafter to avoid injury to plaintiff and (4) fails to do so. The doctrine presupposes plaintiff's contributory negligence. Menke v. Peterschmidt, 246 Iowa 722, 725, 726, 69 N.W.2d 65, 68; Strom v. Des Moines and Central Iowa Ry. Co., 248 Iowa 1052, 1070, 82 N.W.2d 781, 791; Olson v. Truax, 250 Iowa 1040, 1049, 97 N.W.2d 900, 905; Tilghman v. Chicago & N. W. Ry. Co., 253 Iowa 1339, 1343, 115 N.W.2d 165, 168. See also 7 Am. Jur.2d, Automobiles and Highway Traffic, sections 376–379; 34 Iowa Law Review 480.

■ Of course the burden rested upon plaintiff to make a case for the application of the last clear chance doctrine under

the foregoing rules. Nagel v. Bretthauer, 230 Iowa 707, 712, 298 N.W. 852, 854; Menke v. Peterschmidt and Olson v. Truax, both supra; rule 344(f)5, Rules of Civil Procedure.

Defendant's knowledge of plaintiff's situation is shown by admissions made in his deposition. He saw decedent's truck traveling south approximately 500 feet ahead of him and it remained in plain sight. Defendant stated he "figured decedent was going to do something of the sort" by way of turning or stopping. Defendant had a right to assume decedent would obey the laws of the road, including the provisions of Code sections 321.314 through 321.318, until he knew, or should have known in the exercise of ordinary care, decedent was not so doing. These sections require designated signals before a vehicle is turned from a direct course or stopped upon a highway. It appears without dispute decedent gave no signal. Defendant is not to be charged with realization of decedent's peril until in the exercise of reasonable care he should have realized it. Here this was only moments before the collision. He thereafter attempted to avoid injury to plaintiff's decedent but was unable to do so. It can hardly be said defendant had time to be negligent after realization of decedent's peril or had the last clear chance to avoid the collision. We hold the court did not err in refusing to submit the last clear chance doctrine and plaintiff's requested instruction 2.

Our views find support in Menke v. Peterschmidt, 246 Iowa 722, 69 N.W.2d 65; Strom v. Des Moines and Central Iowa Ry. Co., 248 Iowa 1052, 82 N.W.2d 781; Olson v. Truax, 250 Iowa 1040, 1049, 97 N.W.2d 900, 905; Floersch v. Merchants Motor Freight, 8 Cir., Iowa, 248 F.2d 704, 706.

V. Plaintiff claims the trial court erred in failing to submit her allegation defendant failed to operate his automobile at a careful and prudent speed under the existing circumstances.

Instruction 7 given by the court states:

"The laws of Iowa provide that no person shall drive any vehicle upon a highway at a speed greater than will permit him to bring it to a stop within the assured clear distance ahead, such driver having the right to assume, however, that all persons using said highway will observe the law.

74

"The words 'within the assured clear distance ahead' mean the distance from which discernible objects, reasonably expected or anticipated to be upon the highway, may be observed.

"A failure to comply with this provision of law constitutes negligence."

Plaintiff's only requested instruction regarding speed was given as instruction 8. It states:

"Traffic conditions may be such that speed should be less than the statutory limit. Traffic regulations call for the minimum of care and not the maximum. Whatever precautions ordinary and reasonable care and prudence require for the proper protection of others must be taken even though not exacted by statutory provisions. A motorist should not operate his vehicle up to the speed limit of the statute if the circumstances are such that reasonable and ordinary care and prudence require a lesser speed. Failure to exercise ordinary care constitutes negligence."

We agree with defendant's contention that these two instructions properly and sufficiently presented the issue of speed and no prejudice resulted in the trial court's withdrawal of plaintiff's allegation of excessive speed under the circumstances. An additional instruction might well have been subject to attack for overemphasis of the speed issue. Clarke v. Hubbell, 249 Iowa 306, 316, 86 N.W.2d 905, 911, and citations.

VI. Plaintiff urges it was error not to submit the issue of inadequate brakes and not give requested instructions 7 and 8 pertaining thereto. We do not agree.

Code section 321.430 states the type of brakes required on motor vehicles. Section 321.431 requires all brakes be maintained in good working order and that service brakes on vehicles of less than 5000 pounds when on dry asphalt or concrete pavement with the surface free from loose material and the grade does not exceed one percent must be such as to stop a vehicle traveling twenty miles per hour within thirty feet. The evidence establishes defendant was driving approximately sixty miles per hour and when the brakes were applied his vehicle was off the pavement and apparently on loose material. Defendant's brakes were not tested in any manner. No expert testimony was offered.

The evidence clearly shows the brakes did respond when applied. The fact the front wheel which at first was on loose material skidded and the others did not is insufficient to create a jury question on whether the brakes met the statutory requirements.

Our holding finds support in Rice v. McDonald, 258 Iowa 372, 138 N.W.2d 889; Mass v. Mesic, 258 Iowa 1301, 142 N.W.2d 389, and cases cited therein.

VII. The last assigned error asserts the trial court should have given plaintiff's requested instruction 5. It states: "Driving an automobile into another in plain sight is evidence of negligence."

That statement is made in Ruud v. Grimm, 252 Iowa 1266, 110 N.W.2d 321, and repeated in Schneider v. Swaney Motor Car Co., 257 Iowa 1177, 136 N.W.2d 338, both of which are cases where plaintiff's vehicle had been in a stopped position for some time before being struck from the rear by defendant. In both the doctrine of res ipsa loquitur was submitted to the jury. They are readily distinguishable on the facts from the case at bar. As we have pointed out in Division II the res ipsa loquitur doctrine is not applicable to the facts here. The trial court was correct in refusing to give plaintiff's requested instruction 5.

Having found no reversible error the judgment is—Affirmed.

All JUSTICES concur except BECKER, J., who dissents, and STUART, J., who dissents from Division IV and the affirmance.