Loren Joseph DeMOSS, by his Next Friend
and Father, Daniel DeMoss, and
Daniel DeMoss, Appellees,

v.

DARWIN T. LYNNER CONSTRUCTION
CO., Inc. and Donald R. Rife,
Appellants.

No. 52818.

Supreme Court of Iowa.

June 11, 1968.

Roland D. Peddicord, Des Moines, for appellant, Donald R. Rife.

Leo J. Tapscott, Des Moines, for appellees.

LeGRAND, Justice.

This is an appeal from a judgment in favor of plaintiff for injuries sustained when a quantity of dry-wall material fell on him. The accident occurred in a house being built for plaintiff's brother. Suit was brought against the general contractor, Darwin T. Lynner Construction Company, Inc., and Donald R. Rife, dry-wall subcontractor. At the close of plaintiff's evidence a motion for a directed verdict on behalf of the general contractor was sustained and the cause dismissed as to that defendant.

The only remaining defendant, Donald R. Rife, is the appellant here.

The action was brought for plaintiff, a 14-year-old minor, by his father as next friend. The father also sued to recover on his own behalf medical expenses which he was compelled to pay because of injuries to his son. Since the father's claim presents no separate issue, all references here to plaintiff refer to Loren Joseph DeMoss, the injured minor. They apply equally to the father's claim.

■ Action was brought in two counts. The first was based on res ipsa loquitur; the second alleged specific acts of negligence. Both were submitted to the jury as is permissible under our holdings. Eaves v. City of Ottumwa, 240 Iowa 956, 38 N.W.2d 761, 11 A.L.R.2d 1164; Grings v. Great Plains Gas Co., Iowa, 152 N.W.2d 540. A general verdict was returned in favor of plaintiff without a determination as to whether the jury found against defendant under res ipsa loquitur or under one of the specific charges of negligence.

I. We set out first the factual situation under which this accident occurred. Plaintiff's older brother, William DeMoss, had entered into a contract with Darwin T. Lynner Construction Company, Inc., by the terms of which that company was to build a house for him at 3721 S.E. 12th Street in Des Moines. Title to the real estate remained in the contractor at the time of the accident, although William DeMoss was then the contract purchaser thereof. The general contractor entered into various subcontracts for part of the construction work. One of these was with defendant Rife for dry-wall installation. Dry-wall is a type of prefabricated plasterboard used in place of plastered walls. The general contractor also entered into a subcontract with William DeMoss for both inside and outside painting of the house. The general contractor testified that when the person for whom the house is being built contracts to do part of the work himself in order to reduce the ultimate cost, it is the general practice

to enter into the same form of subcontract with him as in any other case. That practice was followed here.

As the construction progressed, the general contractor coordinated the work so that the various subcontractors were alerted to the time the house would be ready for them. Usually several days' notice was given. Upon receiving such notification, defendant ordered the required material from Midwest Hardware Flooring and Plywood Company on September 22, 1965. It was delivered to the job site on September 24, 1965. Delivery was made by a firm of independent haulers, who were employees neither of the general contractor or the subcontractor.

The dry-wall material was delivered in 4 x 12-foot sheets taped together in pairs. There were approximately ten such pairs or a total of 20 sheets. Each sheet weighed approximately 90 pounds. The sheets were stacked on an unfinished wall in the house with one 12-foot side resting on the floor. The testimony varies as to the angle at which the material was stacked against the wall. One witness described it as almost "straight up and down"; others estimated the angle which the sheets made at the point they rested on the floor to be anywhere from 10 degrees to 45 degrees.

Defendant intended to apply the material the Monday following its delivery. He did not tell the supplier how to store the material, nor did the supplier give any such instructions to the haulers.

On Sunday, September 26, 1965, William DeMoss went to the house to do some painting. He took with him plaintiff and a still younger brother, Mike, to help. Plaintiff was then 14 and Mike was 12. At the time of the accident they had been at the house about half an hour. No one else was there. William DeMoss was outside the house. The two youngsters were inside alone. The testimony is undisputed that neither boy had touched the material, nor had William DeMoss. Suddenly Mike yelled a warning to plaintiff that the stack was falling. Plaintiff, however, was unable to escape

and was pinned to the floor by the entire weight of the material, incurring injuries for which he now seeks recovery.

Defendant asserts the following errors: (1) The doctrine of res ipsa loquitur should not have been submitted to the jury; (2) The evidence was insufficient to warrant a verdict on either allegation of specific negligence; (3) The trial court's instructions were prejudicially erroneous with reference to custom and usage, plaintiff's negligence as affecting his right to recover, and loss of earning capacity.

II. Defendant's first assignment of error challenges the application of res ipsa loquitur to the facts existing here. Res ipsa loquitur is a well established doctrine permitting submission of a negligence case to a jury without proof of specific acts of negligence under certain circumstances. The instrumentality causing the injury must have been under the exclusive control and management of the defendant; and the accident must be one that would not in the ordinary course of events have occurred without negligence on the part of the one having such exclusive control. The underlying reason for the application of res ipsa loquitur is sometimes said to be that defendant has vital evidence, or the means of acquiring it, which is not available to plaintiff. We refer to this more fully later in this division.

In our many decisions touching upon this subject we have firmly committed ourselves to requiring satisfactory proof of these foundation facts before applying res ipsa loquitur to a given situation. In Eaves v. City of Ottumwa, 240 Iowa 956, 970, 38 N.W.2d 761, 769, 11 A.L.R.2d 1164, we said, "Our decisions involving the res ipsa rule have uniformly stressed the necessity of defendant's complete and exclusive control of the instrumentality that cause the injury." In Highland Golf Club of Iowa Falls, Iowa v. Sinclair Refining Company, Northern District of Iowa, 59 F.Supp. 911, at page 915 appears this statement, "The Iowa Supreme Court has repeatedly refer-

red to the need and necessity of the defendant having exclusive control of all the instrumentalities causing the damage or injury to the plaintiff as a pre-requisite to the application of res ipsa loquitur. * * " Similar statements may be found in Savery v. Kist, 234 Iowa 98, 103, 11 N.W.2d 23, 25; Whetstine v. Moravec, 228 Iowa 352, 365, 291 N.W. 425, 433 and citations; Peterson v. DeLuxe Cab Company, 225 Iowa 809, 811, 281 N.W. 737, 738; Welch v. Greenberg, 235 Iowa 159, 168, 14 N.W.2d 266, 270; Augspurger v. Western Auto Supply Co., 257 Iowa 777, 781, 134 N.W.2d 913, 915.

In Mogensen v. Hicks, 253 Iowa 139, 110 N.W.2d 563, we held this doctrine should be used sparingly—only when the essential components are present and when common experience indicates the accident is one which would not ordinarily occur in the absence of negligence. This same caution is pointed out in Eaves v. City of Ottumwa, supra, at page 969 of the Iowa Reports, 38 N.W.2d 761, and in Dorcas v. Aikman, 259 Iowa 63, 143 N.W.2d 396, 402. See also 65A C.J.S. Negligence § 220.6, page 537.

■ In the case at bar we find the element of control which is so essential to this doctrine to be completely absent. The evidence discloses only that defendant owned the instrumentality which caused the injury. Although ownership ordinarily carries with it the right to control, there was no control over the material here. We cannot isolate the dry-wall itself from the attendant circumstances under which the accident occurred. 65A C.J.S. Negligence § 220.2, page 512; Hart v. Emery, Bird, Thayer Dry Goods Co., 233 Mo.App. 312, 118 S.W.2d 509, 511. The sheets were stored by an independent contractor in a house then under construction. Many others had rights to the use of the premises equal or superior to defendant's. Defendant had no right to restrict the general contractor, other subcontractors or workmen from going to the construction job.

Defendant had no knowledge as to what went on at the premises between the date of delivery and the date of the accident. Were other subcontractors there? Did someone move the material to facilitate his own work? Was the general contractor, or his agent, there to make one of the periodical inspections about which the evidence talks? In what way could defendant control these and other matters which might arise? If he had insisted no one go on the premises, he would have been demanding something to which he was not entitled. This is perhaps best illustrated by the fact that plaintiff and his two brothers were rightfully there without knowledge or permission of defendant. How many others were similarly there during the two-day interval between delivery and injury? Under such circumstances, we cannot attribute to defendant the exclusive control over the material in question which would justify application of res ipsa loquitur.

This in no way conflicts with Thompson v. Burke Engineering Sales Company, 252 Iowa 146, 106 N.W.2d 351, 84 A.L.R.2d 689, where we held exclusive control at the time of injury was not essential if such control existed at the time of the alleged negligent act "provided plaintiff proves no change in the condition of the instrumentality after it left defendant's control [which could reasonably have] caused the injury." Assuming arguendo the commission of a negligent act, the subsequent circumstances make the rule announced in Thompson inapplicable here. Defendant assumed no actual control over the premises where the material was stored; and, even more important, his status as a subcontractor gave him no right to do so. Neither does what we have said dispute such cases as Weidert v. Monahan Post Legionnaire Club, 243 Iowa 643, 51 N.W.2d 400 (based on a holding no one else was on the premises after defendant's employees had created a negligent condition); Larrabee v. Des Moines Tent & Awning Company, 189 Iowa 319, 178 N.W. 373, 375 (where a professional photographer had invited persons to sit

in bleachers which later collapsed and where we held the jury could find the specific invitation issued for his own profit imposed on him a duty to inspect); or Sutcliffe v. Ft. Dodge Gas and Electric Company, 218 Iowa 1386, 257 N.W. 406 (where the jury could have found defendant had assumed control over a gas heater and had undertaken its inspection.)

Here none of these additional circumstances is present. If there was in fact a negligent act, it was that of an independent contractor for which defendant cannot be charged. Defendant had assumed no actual control over the place where the material was stored nor had he any right to do so; no one was on the premises by his invitation; and it affirmatively appears that others had access to the property subsequent to the alleged negligent act.

We have said the application of the doctrine of res ipsa loquitur depends on the circumstances of each case and no ironclad rules for its use can be established. Orr v. Des Moines Electric Light Company, 207 Iowa 1149, 1155, 222 N.W. 560, 562. Under the circumstances now under consideration we hold the case should not have been submitted on this theory.

Our conclusion finds further support from what we have said several times concerning the "underlying reason" for the res ipsa loquitur doctrine: That evidence of the true cause of the injury is accessible to defendant and inaccessible to plaintiff. Unless res ipsa loquitur is applied in such instances, plaintiff would be left without any means of establishing the cause of his injury.

In Eaves v. City of Ottumwa, supra, at page 972 of 240 Iowa Reports, at page 770 of 38 N.W.2d we said, "The underlying reason for the res ipsa rule or, as Dean Wigmore expresses it, 'the particular force and justice' thereof, is 'that the chief evidence of the true cause * * * is practically accessible to him [defendant] but inaccessible to the injured person.' "

Frost v. Des Moines Still College, 248 Iowa 294, 300, 79 N.W.2d 306, 310, reiterates this statement by describing res ipsa loquitur as a presumption throwing upon the party charged the duty of producing evidence "particularly accessible to him * * * but inaccessible to the injured person."

Recently in Boyer v. Iowa High School Athletic Association, Iowa, 152 N.W.2d 293, 296, we again discussed this "accessibility of evidence" principle. We there said,

"Defendant asserts the res ipsa doctrine does not apply, first, because it is said the evidence of the cause of the collapse was accessible to plaintiff and not peculiarly accessible to defendant. As plaintiff admits in argument, under our decisions the underlying reason for the res ipsa rule is that the chief evidence of the true cause of the injury is practically accessible to defendant but inaccessible to the injured person. (Citations)

"In these precedents one or both of the foundation facts above referred to were lacking and the absence of what we have said is the underlying reason for the rule was given as an added reason why it was not applicable to the particular case. We have never held presence of this 'underlying reason' is an indispensable requirement for application of the doctrine."

In the case now before us this "underlying reason" is absent. Defendant had no superior knowledge, nor any means of obtaining it. It is plaintiff who told in detail how the material was arranged and stacked; the general condition of the premises; and various other details concerning the circumstances of his accident. None of this information was in defendant's possession. As pointed out in the Boyer case, this is a significant factor, though not an "indispensable requirement," in determining if the doctrine of res ipsa loquitur is properly applicable.

As heretofore mentioned we hold the theory of res ipsa loquitur should not have

been submitted to the jury because the element of defendant's control over the instrumentality causing the injury is entirely lacking.

III. Plaintiff's petition asserted five separate grounds of negligence. Two of these were submitted to the jury. They allege defendant was negligent as follows:

(1) In creating or allowing to be created a dangerous condition on the premises which the defendant knew, or should have known, to be a dangerous condition to persons rightfully on the property.

(2) In failing to keep the property reasonably safe.

■■ In considering the first specification we should remember the material was delivered by an independent contractor. Defendant's relationship with him was remote. Defendant merely ordered the material from a lumber supplier in Des Moines. That supplier arranged for delivery by an independent contractor chosen by it, not by defendant. We are confronted with the rule that one is not ordinarily liable for the negligence of an independent contractor. 57 C.J.S. Master and Servant § 609, page 380; Cramblitt v. Percival-Porter Company, 162 Iowa 283, 144 N.W. 23; Giarratano v. Weitz Company, 259 Iowa 1292, 147 N.W.2d 824. Even if we assume the independent contractor was negligent in stacking the material, such negligence would not be attributable to defendant under the circumstances existing here. There is no evidence to justify a finding defendant was negligent "in creating or allowing to be created a dangerous condition on the premises." This specification should not have been submitted.

The second specific allegation of negligence is based on defendant's failure to keep the premises in a reasonably safe condition. The petition refers to keeping the "property" in a safe condition, which at first suggests defendant was being charged only with respect to his maintenance of the dry-wall material. However, the record

shows the case was tried and submitted on the theory defendant was under a legal duty to maintain the *premises* in a reasonably safe condition. While we confess to some misgivings about defendant's obligation to do so, this is nevertheless the law of the case on this appeal under the facts here.

Instruction 6 as given by the trial court provided:

"You are instructed that the plaintiff, Loren Joseph DeMoss, was rightfully on the premises at the time of the accident, and it was the duty of the defendant to use ordinary care in handling and storing the drywall material, and to have the premises in a reasonably safe condition for those who might rightfully come upon the premises, and a failure to do so would constitute negligence on the part of the defendant.

"The liability of the defendant to the plaintiff, if any, must be predicated upon the failure to use reasonable and ordinary care to prevent the injury. The defendant is not an insurer of the safety of the plaintiff, but is only required to use reasonable and ordinary care to protect the safety of the plaintiff. The duty to exercise reasonable and ordinary care to keep the premises safe is the test, rather than whether the premises were, in fact, safe.

"If you find that the plaintiff has established by a preponderance of the evidence that the defendant herein did not exercise that degree of care which an ordinary careful and prudent person would have exercised under the circumstances and conditions in creating or allowing to be created a dangerous condition on the premises which defendant knew, or should have known, to be a dangerous condition to persons rightfully on the premises, or in keeping the premises reasonably safe, then the defendant would be guilty of negligence.

"On the other hand, if you find the plaintiff has failed to establish said specifications of negligence by a preponderance of

the evidence, then the defendant would not be guilty of negligence, and your verdict should be for the defendant."

■ No objection was taken to this instruction nor was any instruction requested by defendant which would negative such an obligation. This then is the law of the case. Almon v. Chicago & Northwestern Railway Company, 163 Iowa 449, 144 N.W. 997; Hurtig v. Bjork, 258 Iowa 155, 138 N.W.2d 62 and citations.

■ ■ In considering a motion for directed verdict or for judgment notwithstanding verdict, we are required to view the evidence in the light most favorable to the party against whom the motion is made. Rule 344(f)2, Rules of Civil Procedure; True v. Larimore, 255 Iowa 451, 461, 123 N.W.2d 5, 10. By applying that rule we hold there was enough here to submit to the jury on the question of failure to keep the premises reasonably safe.

IV. The defendant's remaining assignments of error concern instructions given by the court. We have considered the instructions and the specific objections to them and find no reversible error therein.

For the reasons stated in Divisions II and III we hold defendant is entitled to a new trial and the cause is reversed and remanded for that purpose.

Reversed and remanded.

GARFIELD, C. J., and LARSON, SNELL, MOORE, STUART and MASON, JJ., concur.

BECKER, J., dissents.

RAWLINGS, J., joins in this dissent.

BECKER, Justice.

I dissent.

In considering the exclusive control test in Division II the majority cites Boyer v. Iowa High School Athletic Association, Iowa, 152 N.W.2d 293. It is submitted that in Boyer, and at least four other cases cited by the majority, the evidence showed no exclusive control in defendant but res ipsa loquitur was applied. The special concurrence in Boyer need not be reiterated here. The authorities cited in the special concurrence reach what I believe to be the better rule, i. e. "The essential question becomes one of whether the probable cause is one which the defendant is under a duty to the plaintiff to anticipate or guard against."

In this case an 1800 pound pile of sheeting tipped or slid out of position without any apparent cause. The sheeting belonged to defendant subcontractor. True, he ordered it from an independent lumber yard which had it delivered by an independent trucking firm, but certainly when it was delivered, two days before the accident, reasonable minds could conclude defendant had some duties in relation to it.

We should not confuse the building premises with the pile of dry wall. Much is said about defendant's lack of control of the premises. The premises did not injure plaintiff; 1800 pounds of dry wall sheeting caused the injury. Of course defendant had no control over the premises. He did have control over the sheeting. It was his sheeting, he owned it, it was delivered at his express order. Yet in effect this case says defendant had no duty in relation to the sheeting until his men started to nail it on the wall.

Such a distinction was made in the Boyer case, supra; and in Thompson v. Burke Engineering Sales Company, 252 Iowa 146, 106 N.W.2d 351, 84 A.L.R.2d 689; Weidert v. Monahan Post Legionnaire Club, 243 Iowa 643, 51 N.W.2d 400; Larrabee v. Des Moines Tent & Awning Company, 189 Iowa 319, 178 N.W. 373, 375 and Sutcliffe v. Ft. Dodge Gas and Electric Company, 218 Iowa 1386, 257 N.W. 406. The majority dispenses with that distinction. It would appear that even if we continue the

exclusive control test it was met here as it was in the foregoing cited cases.

The language used in Larrabee v. Des Moines Tent & Awning Co., 189 Iowa 319, 325, 178 N.W. 373, 375 seems peculiarly apropos: "Whatever the actual cause of this accident, such cause could be found to be fairly within the range of Bittle's supervision and control. The accident was one which would not ordinarily happen. A jury might find that ordinary care on his part would require that he should have inspected the structure before its occupancy, and that he should have guarded its supports against interference, accidental or otherwise, by passers-by. He did not inspect, and did not guard."

This should be matched to the following colloquy from the record, defendant Rife speaking:

"Q. Well, it's customary for you to go out and inspect the material after it's delivered? A. Right.

"Q. And you don't know that you did it on this job? A. I did, but not prior to this Sunday, this accident.

"Q. In any event from Thursday until Sunday you had made no inspection? A. Not that I can remember."

II. Since this case is to be retried there is another matter of equal importance. The majority holds that the following specification should not have been submitted: "(1) In creating or allowing to be created a dangerous condition on the premises which the defendant knew, or should have known, to be a dangerous condition to persons rightfully on the property."

Restatement, Second, Torts § 384, p. 289 (1965) states: "Liability of Persons Creating Artificial Conditions on Land on Behalf of Possessor for Physical Harm Caused While Work Remains in Their Charge. One who on behalf of the possessor of land erects a structure or creates any other condition on the land is subject to the same liability, and enjoys the same freedom from liability, as though he were the possessor of the land, for physical harm caused to others upon and outside of the land by the dangerous character of the structure or other condition while the work is in his charge." See comment d at 290.

The theory of the majority holding is that defendant was insulated from liability by the fact an independent contractor delivered the dry wall. The fact the jury could find defendant, in the exercise of ordinary care, had a duty to inspect the material and see that it was properly piled is ignored. Again, the duty in relation to the premises is confused with the duty in relation to the dry wall. The dry wall was delivered on Friday. The injury occurred on Sunday. Defendant knew, or should have known, others were likely to be on the premises before Monday when he planned to use the material. The jury could easily find defendant had a duty in the exercise of reasonable care to inspect *his property* to see that it was safely and properly stored. (It might also find contra. But that is the jury's province, not ours.) The fact the independent contractor may have also been negligent does not relieve this defendant from liability. 57 C.J.S. Master and Servant § 609, p. 381 states: *"Joint liability.* Where the original contractor and the subcontractor have joint supervision over the construction of the building, and cooperation in its construction is necessary between them, and that part of the construction undertaken by the subcontractor is concurrently and conjointly done with the remaining portion of the work which is under the control of the original contractor, they are jointly liable to persons injured by reason of their negligence."

Does this court really mean to say as a matter of law defendant here had no duty in connection with the dry wall because it was delivered by an independent contractor and defendant had not bothered to inspect it or exercise any control over it for two days? This seems to be what the majority holds when it says there is no evi-

dence defendant created *or allowed to be created* a dangerous condition on the premises which defendant knew, or should have known, to be a dangerous condition. Do subcontractors have no duties as to such material until they start nailing it on the wall? As indicated, I would affirm. But if this case is to be retried, it seems to me the first specification of negligence should remain in the case.